## CHARLES M. K. PAULISON and wife

### v.

## JOHN H. VAN IDERSTINE.

1. Where a bill was filed to recover part of the purchase money of land sold at a certain price per city lot, and which, by mistake of the vendor and vendee, was supposed to contain only 31 lots, whereas there were in fact 45, *Held*, that the vender was not entitled to relief: (1) because she had an adequate remedy at law; (2) because she had not sought to rescind the contract; (3) because it appeared that she had waited nearly six years before demanding payment, and (4) also, because it did not appear that the mistake was mutual.

2. Where a bill was filed by husband and wife in respect to the wife's separate estate, objections to the joinder of the husband as co-complainant with his wife, made on the final hearing, will not prevail. An amendment would be ordered.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. J. C. Paulison*, for complainants.

*Mr. J. R. Emery*, for defendant.

THE CHANCELLOR.

This suit is brought to recover from the defendant $4,900, alleged to be due from him to Mrs. Paulison, one of the complainants, with interest thereon from the 3d of March, 1869. The ground of the claim is, that at that date the complainant sold to the defendant an unimproved plot of land in the city of Passaic, in this state, belonging to Mrs. Paulison; that the price agreed to be paid therefor was $350 a city lot of 2,500 square feet; that, owing to an error in the map on which the plot was laid down, the parties were misled as to its contents, and a mistake was consequently made in computing the price, which was fixed at $10,900, instead of $15,800: it being supposed that there were in the property

Paulison *v.* Van Iderstine.

only about thirty-one city lots of 2,500 square feet each, whereas it in fact contained forty-five of that size. The error on the map was in the figures indicating the length of two or the external lines of the property, one of which was laid down as 339.5 feet, when it should have been 532.8 feet, and the other as 508.5 feet, instead of 706.1 feet, the true length. The negotiation for the sale of the property to the defendant was conducted on behalf of Mrs. Paulison by her husband. There can be no doubt that the alleged mistake was made by him in estimating the price at which the property was sold; nor, that it was made by reason of the error in the map. The map was one which the complainants had caused to be made. The mistake in it was not discovered by them until September, 1869, when the city surveyor, in the course of a survey made by him for a projected municipal improvement, detected the error. He immediately communicated his discovery to Mr. Paulison. The defendant appears to have discovered it at an earlier day by pacing one of the lines. Though the matter appears to have been the subject of some conversation between the defendant and two or three of his acquaintances, neither of the complainants ever spoke to him in reference to it up to within a few days before the commencement of this suit, (which was in February, 1875,) when Mr. Paulison called upon him and demanded payment of the difference in price ($4,900) caused by the mistake, and interest thereon.

It appears that the defendant, in all the conversations which were had with him on the subject, insisted that he was not liable to pay anything more than he had already paid, and that he had bought the property at a price ($10,900) fixed by Mr. Paulison, and that he did not agree to pay for it according to its contents. For part of the purchase money the defendant conveyed to Mrs. Paulison a house and lot belonging to him in Passaic, and for the balance he gave to her a mortgage for $7,100, and interest, upon the property conveyed to him. That mortgage was assigned by the complainants to B. W. Merriam, in August, 1869, and it has been paid off.

It appears from the evidence that at the time when the negotiation for the sale began, the defendant was anxious to dispose of his house and lot above mentioned, and that he had spoken to Samuel B. Fritts, a real estate broker in Passaic, on the subject. The latter suggested the exchange of the house and lot with Mrs. Paulison, for some of her unimproved land. The land which was subsequently purchased by him from Mrs. Paulison soon became the subject of their consideration, with a view to an exchange. The defendant was unwilling to take the whole of it, because of the large amount of the mortgage he would be compelled to give upon it on account of the purchase money. He proposed to take part of it only; but that proposition was not entertained. The result was, that he and Mr. Paulison met at Fritts's office, and a negotiation took place there on the subject of the exchange, on the basis of the purchase by the defendant of the entire plot. The parties then came to an agreement, but it was only after the gross price at which the defendant was to take the property, had been computed and stated to him by Mr. Paulison. Though the latter, in his testimony, says that no definite sum was mentioned, he admits that " there might have been a rough calculation as to about how many lots there were in the tract;" but he adds that he is quite certain that there was no definite sum agreed upon as the result of the calculation. Mr. Fritts, however, testifies that on that occasion the calculation was made by Mr. Paulison, in figures, as to the quantity which the whole area of the plot contained, and what it amounted to at the price of $350 a lot.

The defendant testifies that Mr. Paulison made a calculation upon a piece of paper, before he told him what he would take for the property. He swears that he was so much influenced by the amount of the purchase money, that had it been stated to him at the amount now claimed, he would not have taken the property. Mr. Fritts testifies that the defendant was reluctant to take the whole of the plot. He says: " Mr. Van Iderstine's reasons to me from first to last were that he did not like to take the responsibility of carry-

ing so much property." He further says, obviously referring to an occasion previous to the meeting between Mr Paulison and the defendant in Fritts's office: "He (the defendant) told me that he had concluded to make the deal with Pauli-son for the whole property, if Paulison would not deal with him for part, and I told him that Paulison would not deal unless he took it all. Well, he said, I will make the deal. He asked me if I knew how much there was in it. I took a map of it which I had, and made a calculation as quickly as I was able to. I could not get at it exactly, for the reason that there was an arc of a circle on one end of it on Erie street. I told him that I made so many city lots; I don't recollect how many; and then I calculated it by $350 a city lot, amounting to so much; how much, I don't recollect." So that Fritts gave to the defendant, before the negotiation with Mr. Paulison began, the same amount as the price of the property which was subsequently given to him by Mr. Paulison; for the map from which Fritts took his data for his calculation, was a copy of that which was used by Mr. Paulison in his calculation. Though the bill states that the mistake was not discovered by the complain-ants until after the defendant had sold a considerable part of the property, and although Mr. Paulison testifies that the first knowledge or intimation which he had that the map was incorrect, was when he was informed by the city surveyor, which, he says, was pretty nearly a year after the conveyance of the plot to the defendant, the city surveyor testifies that he discovered the mistake in the map on the 27th of September, 1869, and informed Mr. Paulison of it on the same day; and it appears by the bill that the first conveyance of any part of the property by the defendant was not until the 28th of March, 1871, a year and a half after Mr. Paulison had been made aware of the error. And it was not until February, 1875, that the complainants made any demand upon the defendant for the rectification of the alleged mistake. He had then sold and conveyed away all the property, and in the meantime had made large

expenditures upon the premises in preparing them for sale. When he bought the property it was wholly unimproved. It was part of a farm and was in the ordinary condition of farm land. For the property the defendant realized, after allowing for interest and expenses, but little more than the amount which the complainants allege he agreed to pay for the purchase money. The complainants did not at any time seek to rescind the contract for the alleged mistake. They waited for five years before making even a demand on the defendant in reference to it. Though the bill alleges fraud on the part of the defendant, there is no evidence of it, and on the hearing the claim for relief was based entirely on the allegation of mutual mistake.

Although the complainants offer, as excuse for not having made any demand or taken any proceedings for rescission or any other relief in the premises, their hope of an amicable adjustment of the matter, through the good offices of mutual friends, yet it appears that at all times the defendant refused to entertain the complainants' claim, and alleged that he had fairly paid all that he had agreed to pay for the property, and all that he was in justice bound to pay. It was the duty of the complainants, in view of that claim on the part of the defendant, if they desired relief, to take immediate steps for the rescission of the contract while as yet the parties could be placed *in statu quo*. The bill, as already stated, is in fact a bill for the recovery of part of the purchase money of the conveyance. It prays, indeed, that the defendant may be decreed to be a trustee for Mrs. Paulison for the amount of purchase money which the complainants claim from him, but, notwithstanding that, it is merely a suit for the recovery of an amount of purchase money which, as the complainants allege, was not received, through mutual mistake of the parties in making the computation of the amount. The case has no claims upon a court of equity.

It remains to consider the objection of misjoinder raised in the answer and insisted upon at the hearing. There is

undoubtedly a misjoinder of the husband with the wife in this suit, which is brought in reference to her separate property. *Johnson* v. *Vail*, 1 *McCart.* 423. The error, however, would have been of no importance, practically, had Mrs. Paulison appeared to have been entitled to the relief sought. In that case an amendment would have been ordered, which would have obviated the objection. The bill will be dismissed with costs.