OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY

## AND THE PREROGATIVE COURT,

MARCH TERM, 1896.

---

GEORGE G. GREEN, appellant,

*v.*

EDWARD B. STONE, respondent.

|   |   |
|---|---|
| 54 | 387 |
| f56 | 839 |
| 54 | 387 |
| 58 | 341 |
| 58 | 342 |
| 58 | 343 |
| 54 | 387 |
| 60 | 277 |
| 54 | 387 |
| 62 | 531 |
| 62 | 574 |
| 62 | 575 |
| 54 | 387 |
| 64 | 778 |

1. A stipulation in a deed *inter partes*, that the grantee will assume and pay a debt secured by a mortgage on the premises, for the payment of which the grantor is personally liable, is a contract by the grantee with the grantor for the indemnity of the latter, and the obligation of the grantee to pay the mortgage debt enures in equity for the benefit of the mortgagee, and he may enforce it against the grantee to the extent of the unpaid part of the .mortgage debt, after the proceeds of the mortgaged estate have been applied thereon.

2. The remedy of the mortgagee in equity against the grantee for the mortgage debt so assumed is not affected by the acts of 1880 and 1881. *Rev. Sup. pp. 489, 490.*

387

3. In granting relief on the ground of mistake, there is a distinction between the rescission and the reformation of a written instrument. A court of equity may rescind a written contract for a mistake which is unilateral; that is, a mistake on the part of one of the parties only. In such a case, the whole contract is set aside and the parties restored to their original position. There can be no rescission unless the parties can be restored to their original position.

4. But in the case of the reformation of a contract or deed by altering or expunging some of the terms contained in it on the ground of mistake, the part improperly introduced into it will be altered or expunged and the instrument will stand as reformed. To warrant reformation in the absence of fraud or imposition, there must be a mutual mistake; that is, a mistake shared by both parties.

5. To justify the reformation of a deed delivered, accepted and acted upon, on the ground that it did not correctly express the agreement made by the parties, the proof must be clear and convincing and upon testimony that is unexceptionable, both with regard to the agreement actually made by the parties and the mutuality of the mistake through which a different agreement was put in the deed. Until a mistake has been established by such force of proof as leaves no rational doubt of the fact, no change in the writing sought to be reformed is entitled to be called a correction.

6. On a bill filed by a mortgagee to enforce the assumption of the mortgage debt by the grantee of the mortgagor, the defence that the assumption clause was improperly inserted in the deed should be made by a cross-bill, and the grantor, or his personal representatives in case of his death, should be made parties to such cross-bill.

On appeal from a decree in *Green* v. *Stone,* advised by Vice-Chancellor Bird.

*Mr. Austin H. Swackhamer,* for the appellant.

*Mr. John J. Crandall,* for the respondent.

The opinion of the court was delivered by

DEPUE, J.

This is a suit in equity by Green, a mortgagee, against Stone, a purchaser from the mortgagor of a portion of the mortgaged premises, praying a decree that the defendant pay the balance of the mortgage debt remaining unpaid after applying thereto the amount realized from the foreclosure and sale of the mortgaged

premises.    On final hearing the complainant's bill was dismissed. From this decree the complainant appealed.

One George S. Beckett was the owner of two tracts of land situate in the county of Gloucester; the one situate in Logan township, containing four hundred and thirty-eight and eighty-one hundredths acres, known as the Middleton farm; the other situate in the township of Harrison.    In December, 1885, Beckett gave the complainant a mortgage for $15,000 on both tracts, together with a bond for the payment of the mortgage debt.    By a deed of conveyance, dated January 25th, 1893, Beckett conveyed the farm above mentioned to the defendant. The consideration named in the deed was $16,000, and at the end of the description of the premises and estate conveyed, the deed contained the following clause:

"Subject to the payment of a certain mortgage debt of fifteen thousand dollars, with interest thereon at five per centum per annum, made by said George S. Beckett to George G. Green, covering the property hereby conveyed *inter alia*, which the said Edward B. Stone hereby assumes and agrees to pay as a part of the consideration hereof."

The deed was prepared by George H. Barker, a real estate agent and conveyancer, at the request of Beckett, in pursuance of instructions given by him.    It was delivered by Beckett to Stone, on the 3d of February, 1893, at the office of Martin V. Bergen, who was the counsel of Stone, and was placed upon record the same day.

Subsequently, in April, 1894, the complainant filed a bill to foreclose his mortgage.    Beckett and wife and Stone were made defendants in the foreclosure suit.    A decree of foreclosure and for the sale of the mortgaged premises, including both tracts, was obtained in July, 1894, and the premises were sold by the sheriff, on the 24th of September, 1894, at public auction, by virtue of an execution issued upon the decree, the complainant being the purchaser for a sum which left unpaid a considerable portion of the mortgage debt.    This bill was filed to enforce the payment by Stone of such part of the mortgage debt as remained unsatisfied, in compliance with the agreement to assume and pay the mortgage debt contained in his deed.

A deed *inter partes* whereby an estate is conveyed, if accepted by the grantee, is in legal effect the deed of both parties, and a stipulation in such a deed by the grantee that he will assume and pay a debt secured by a mortgage on the premises for the payment of which the grantor is personally liable, is a contract by the grantee with the grantor to pay the mortgage debt, especially where the mortgage debt is computed as part of the consideration money for the conveyance. This contract is with the grantor for his indemnity, and the obligation of the grantee to pay the debt enures in equity for the benefit of the mortgagee, and he may enforce it against the grantee to the extent of the unpaid part of the mortgage debt remaining due after the proceeds of the mortgaged estate have been applied thereon. The principle on which the mortgagee in such cases is entitled to enforce the obligation of the grantee is, that by the acceptance of a deed containing an assumption of the mortgage debt, the grantee becomes the principal debtor—the liability of the grantor as between the parties being that of a surety only; and by a well-settled doctrine of equity the mortgagee as a creditor may, by way of subrogation, have the benefit of all collateral obligations which a person standing in the situation of a surety for another holds for his indemnity. The contract being with the grantor for his indemnity, may be released or discharged by him at any time before the mortgagee proceeds to enforce his rights against the grantee; but if at the time suit is brought by him, the obligation of the grantee to pay the mortgage debt is in existence undischarged, his remedy against the grantee is complete. *Klapworth* v. *Dressler, 2 Beas. 62 ; Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650 ; Youngs* v. *Trustees of Public Schools, 4 Stew. Eq. 290 ; Vreeland* v. *Van Blarcom, 8 Stew. Eq. 530 ; Sparkman* v. *Gove, 15 Vr. 252 ; Keller* v. *Ashford, 133 U. S. 610, 622, 623 ; 1 Jones Mort.* § *755.* All the cases agree that the language contained in this deed creates an obligation on the part of the grantee which the mortgagee may enforce in equity. This remedy of the mortgagee is not affected by the acts of 1880 and 1881. The first section of the act of 1880 regulates simply the form of proceeding in foreclosure suits, and

the second and third sections, as amended by the act of 1881, apply to suits at law upon bonds secured by mortgages. *Rev. Sup. pp. 489, 490.* The ancient and familiar doctrine in equity that the creditor shall have the benefit of any obligation or security given by the principal to the surety for the payment of the debt, and the remedy in a court of equity to enforce this equitable doctrine, are not impaired by this legislation. The remedy in equity is independent of the foreclosure suit. *Pruden* v. *Williams, 11 C. E. Gr. 210.*

Beckett died in August, 1894, and after the sale of the mortgaged premises under the foreclosure, Stone filed a bill in equity against Beckett's representatives for the reformation of the deed by eliminating therefrom the covenant of assumption, on the ground that the same was inserted in the deed without his knowledge and by mistake, and that it was not the intention of either of the parties to said deed to have it in the deed. The case was heard by an advisory master on bill, answer and depositions, and the master denied the relief prayed for and advised that the complainant's bill be dismissed. Upon his advisory opinion a decree was made accordingly. This decree was affirmed by this court. *Stone* v. *Beckett (March Term, 1896).* By force of this decree it was adjudged as a finality that the contract of the grantee with the grantor to pay the mortgage debt was a valid and subsisting obligation. Inasmuch as the right of the complainant in this case results from the contract between Stone and Beckett, it would follow as a legal conclusion that the decree in the former suit, if put in evidence, would determine the rights of these parties, unless some independent equity, extraneous of the conduct of the immediate parties to the deed, be made to appear. The record does not disclose that the decree in the former suit was put in evidence in this case. The case will therefore be examined *de novo* upon the pleadings and evidence.

The defendant, in his answer, admits that by the deed of January 25th, 1893, Beckett conveyed to him the premises described in the deed. He denies that he accepted the said deed pursuant to any bargain and sale between him and Beckett. He also denies that the said agreement to assume and pay the

mortgage was in any form accepted by him, and says neither he
nor Beckett ever bargained for such an undertaking, and that
he never saw the deed until after the foreclosure suit was begun;
that after the process in that suit was served upon him, he in-
spected the deed for the first time, and until that time he was
wholly ignorant of such an undertaking being inserted in the
deed.  He also alleges in his answer that he took title to the
premises for the benefit of one McClung, at the request of Beck-
ett and McClung, and that he held the title as security for the
payment to him of $1,000 by McClung, and that McClung was
the real purchaser.

The facts connected with this transaction, as stated by the
vice-chancellor in his opinion, are briefly these : " Edward B.
Stone, the defendant, was the owner of four houses and lots in
Camden which were subject to mortgages, the equity in the four
being considered equal to $2,000.  One McClung was desirous
of becoming the owner of said farm, and not having the cash
with which to make the purchase, and knowing that Beckett
wanted to sell his farm, and that Stone was willing to dispose
of his houses and lots, adopted the following scheme, with the
view of ultimately securing the title in himself, and in so doing
to limit the number of conveyances as much as possible.  He
procured the consent of Stone to make conveyance of his said
four lots directly to Beckett in consideration of Beckett convey-
ing the farm to Stone, instead of having the Stone conveyance
first made to himself and then conveying to Beckett, with the
express agreement that the $2,000, at which the equity of re-
demption in the Stone lots was valued, should be paid to Stone
by McClung, and that Stone should hold as security therefor the
title to the said farm."

The negotiations which resulted in the exchange of the Cam-
den lots for the Beckett farm were conducted entirely by
McClung.  The parties met at the office of Martin V. Bergen
February 3d, for the purpose of the delivery of the deeds by the
parties, respectively.  The persons present on that occasion were
Beckett, Stone, McClung and Mr. Bergen, who had been the
counsel and adviser of Stone for many years.  Beckett had the

Green v. Stone.

deed from him to Stone for the farm executed and acknowledged on the 25th of January, 1893. The deed from Stone to Beckett was prepared in Bergen's office. Mr. Bergen testified that

"after Beckett brought his deed there and he delivered that deed to Stone and McClung, both were there, and Stone had his deed there, and both lay on the table, and I chucked one to one and one to the other, and then I drew an agreement."

He also testified that he did not examine the deed—only looked to see if it was acknowledged. The agreement referred to is the agreement between Stone and McClung:

"Agreement entered into this 3d day of February, 1893, between Edward B, Stone, of the city of Camden, N. J., of the first part, and Thomas K. McClung, of the second part. (1) It is agreed that the said party of the first part, for and in consideration of the sum of $2,000, is to convey to the said party of the second part the property conveyed to the said party of the first part by George S. Beckett, by deed dated January 25th, 1892, situated in Logan township, Gloucester county, New Jersey, containing about 438.08 acres. (2) The said agreement is to be carried out within sixty days from the date hereof. (3) The property is to be conveyed subject to the encumbrance thereon, over and above said $2,000. (4) The conveyance or transfer of said property is to be made to said party of the second part or to such person as he may designate, and for such consideration as he may name. In witness whereof the said parties have hereunto set their hands and seal, the 3d day of February, 1893. Signed and sealed in the presence of Martin V. Bergen. Edward B. Stone Thomas K. McClung."

The deed was left with Bergen to be recorded, and was recorded the same day. In virtue of the title conveyed by the deed, possession of the farm was taken immediately, and was held until the foreclosure sale. The property has meanwhile been under the control of McClung exclusively, but his possession and control have been with the acquiescence and consent of Stone, and under the title Stone obtained under the deed. The vice-chancellor, in his opinion, says that, "so far as Stone was concerned, he was simply an instrument used by McClung to procure the passage of the title to the farm to himself ultimately." It is not necessary to consider whether McClung practiced any fraud or deception to induce Stone to consent to the arrangement made between them. The problem for judicial decision is how

Green v. Stone.

far the arrangement between them can be permitted to affect the rights of Beckett under the contract Stone made with him. This problem must be solved in conformity with legal principles. Beckett took no part in the negotiation of the arrangement between Stone and McClung. He simply agreed to make the deed to Stone, which was eminently proper, inasmuch as the transaction was an exchange for property of which Stone was the owner. Stone testified that he had no acquaintance with Beckett; that before the meeting at Bergen's office to exchange deeds he had never seen him but once; that Beckett and McClung at that time came to his office, and that he had no conversation with him. That interview manifestly took place after all the negotiations had been concluded, and all that occurred at the time is testified to by Stone, as follows:

"Mr. McClung introduced me to Mr. Beckett, and Mr. McClung says, 'Ed., Mr. Beckett will take those properties;' and he said, 'Will you have the deeds made in this fashion?' He says, 'You bring me that deed and I will have the deeds drawn.' All right; I brought him down the deeds, and they left, and Mr. Beckett asked me how much there was against the property, and I told him. He asked me about the tax, if that is paid, and I told him they were, and that is about all that was said as far as I can recall."

Nothing was done at that interview tending in the slightest degree to influence Stone to make the indiscreet arrangement he made with McClung. Nor is there any proof that Beckett had knowledge of the personal transactions between McClung and Stone. The only evidence touching that subject is the fact that Beckett was present at Bergen's office when the agreement between McClung and Stone was prepared and read, and it does not appear that he gave such attention to the paper, which did not concern him, as to become informed of its contents. All that Bergen testified to was that "Beckett was there while I fixed the matter up, and they signed the agreement, and they all went out together. That is all I know about it." Nor was there anything in the paper that would excite suspicion of wrong. The agreement was simply for an option to McClung to purchase the property within a limited time for the sum of $2,000, subject to the encumbrances. On this evidence the vice-chancellor

Green v. Stone.

concludes that it would be highly inequitable to enforce against Stone the claim for a deficiency. In this view as a basis of judicial decision I cannot concur. It was competent for Stone to take the place of McClung as the contracting party to oblige the latter, and so far as Beckett was concerned, Stone voluntarily became the contracting party by accepting the deed to him as grantee containing a covenant that, as part of the consideration of the conveyance, he would assume and pay the mortgage on both tracts. The legal effect of such a covenant is not changed by the fact that the remedy upon it is sought in a court of equity. The covenant has the same efficacy in a court of equity as in a court of law, unless it be set aside or avoided on some one of the grounds on which a court of equity may annul or reform a deed —fraud or mistake.

There is no proof to sustain an allegation of fraud. It is conceded that the mortgage debt upon both tracts was comprised in the consideration for the conveyance. Stone testified that McClung told him that he was paying $21,900 for the property. To make up that sum the whole mortgage debt was required to be included. The covenant to assume and pay the entire mortgage debt is full and specific, more so than is usual, and is contained in that part of the deed in which such covenants are usually placed. Beckett gave the deed into the hands of Mr. Bergen, who was an experienced lawyer, and had been the counsel and adviser of Stone for many years. Both McClung and Stone knew of the mortgage on the farm and the amount of it, and that the mortgage debt was part of the consideration of the conveyance. If either Bergen or Stone or McClung had exercised ordinary care, the presence of the covenant in the deed would have been discovered.

Nor is there such proof in the case as would justify the reformation of the deed on the ground of mistake. Courts of equity may grant relief on the ground of mistake, by rescinding the entire contract or reforming it, but such relief will not be granted in case of a deed, unless upon proof that is entirely satisfactory and convincing. In granting relief on the ground of mistake, there is a distinction between the rescission and the reformation

of a written instrument.   A court of equity may rescind a con-
tract for a mistake which is unilateral—that is, a mistake on the
part of one of the parties only.   In such a case, the whole con-
tract is set aside, and the parties restored to their original posi-
tion.   But in the case of the reformation of a contract or deed
by altering or expunging some of the terms contained in it on
the ground of mistake, the part improperly introduced into it
will be altered or expunged, and the instrument will stand as
reformed.   To warrant reformation there must be a mutual mis-
take—that is, a mistake shared in by both parties.   *Paget* v.
*Marshall, 28 Ch. Div. 255; 2 Pom. Eq. § 870.*   Consequently,
no relief can be granted for a mistake which is unilateral after
the position of the parties has been changed so that the former
state of things cannot be restored.   *Pollock Cont. 541.*   The deed
was delivered and accepted, and possession taken and held under
it until the entire estate was divested by a sale in the foreclosure
suit.   The defendant, in his answer, admits that he became aware
of this covenant shortly after process was served upon him in
the foreclosure proceeding.   No efforts were made to rescind the
conveyance by restoring the title to Beckett, and, at this time,
restoration of Beckett to his original position has become impos-
sible, and relief by the way of rescission could not be·granted
even if the proof of unilateral mistake were entirely satisfactory
and convincing.

Under the circumstances, the only relief that can be considered
is by way of reformation, by expunging the contract of assump-
tion on the ground that it was inserted in the deed by the mis-
take of the parties mutually.   The vice-chancellor disposes of
this aspect of the case on the authority of *Bull* v. *Titsworth, 2
Stew. Eq. 73.*   The other cases cited in the opinion under this
head are not relevant to this precise subject.   In *Bull* v. *Tits-
worth* the chancellor found as a fact that the assumption of the
mortgage was not part of the agreement made on the purchase
of the property, and that the defendant, when he accepted the
deed, was not aware that it contained the clause.   The assump-
tion clause was not in that part of the deed in ·which such an
agreement was usually written—at the end of the description

of the premises—but was inserted among the covenants by the grantor, and at the end of the description of the property the statement was that the property was conveyed subject to the mortgage. It also appears by the chancellor's opinion, that when the defendant discovered the covenant, he sought to rescind the contract on that account, and offered to surrender the deed to the grantor on receiving back a railroad bond of $1,000, which he had given as the consideration for it; and when the grantor stated that he was unable to return the bond to him, he offered to surrender the deed on the receipt of $50, which offer the grantor declined. The defendant had acted promptly, and had done all that was necessary to effect a rescission and restore to the grantor the title he had conveyed. The chancellor's opinion does not sustain the reporter's head-note. The case is not authority for the position that a deed will be reformed for a unilateral mistake where there has been no rescission of the entire transaction.

The doctrine that a contract or deed will not be reformed for mistake, in the absence of fraud or imposition, unless the mistake was mutual, that is, reciprocal and common to both parties, where each alike was under the same misconception as to the terms of the written instrument, is the settled doctrine of courts of equity. This doctrine is accurately stated by Mr. Kerr in this language :

"There can be no rectification if the mistake be not mutual or common to all parties to the instrument, or if one of the parties knew of the mistake at the time he executed the deed. Where one party only has been under a mistake, while the other, without fraud, knew what the character of the deed was, and intended that it should be, the court cannot interfere, for otherwise it would be forcing on the latter a contract he never entered into, or depriving him of a benefit he had *bona fide* acquired by an executed deed. Rectification can only be had where both parties have executed an instrument under a common mistake and have done what neither of them intended. A mistake on one side may be a ground for rescinding but not for correcting or rectifying an agreement." *Kerr Fr.* (*2d ed.*) *498.*

The doctrine is stated by Chief-Justice Spencer in this language: "It is not enough in cases of this kind to show the sense and intention of one of the parties to the contract; it must

be shown, incontrovertibly, that the sense and intention of the other party concurred in it; in other words, it must be proved that they both understood the contract, as it is alleged it ought to have been, and as in fact it was, but for the mistake. It would be the height of injustice to alter a contract on the ground of mistake, where the mistake arises from misconception by one of the parties in consequence of his imperfect explanation of his intentions. To make a contract, it is requisite that the minds of the contracting parties agree on the act to be done; if one party agrees to a contract under particular modifications, and the other party agrees to it under different modifications, it is evident there is no contract between them. If it be clearly shown that the intention of one of the parties is mistaken and misrepresented by the written contract, that cannot avail unless it further be shown that the other party agreed to it in the same way, and that the intention of both of them was, by mistake, misrepresented by the written contract." *Lyman* v. *United Insurance Co., 17 Johns. 377.*

Equally explicit is the language of Chief-Justice Ames, in *Diman* v. *Providence R. R. Co., 5 R. I. 130, 135,* where he said : " If the court were to reform the writing to make it accord with the intent of one party only to the agreement, who avers and proves that he signed it as it was written by mistake, when it accurately expressed the agreement as understood by the other party, the writing, when so altered, would be just as far from expressing the agreement as it was before, and the court would be engaged in the singular office of doing right to one party at the cost of a precisely equal wrong to the other."

The cases to the same effect are numerous. Many of them will be found in the following citations: *2 Lead. Cas. Eq. (4th ed.) 979, 980, 981; American note to Worlam* v. *Hearn, 15 Am. & Eng. Encycl. L. 629 tit. "Mistake;" 1 Sugd. V. & P. (14th ed.) 243, and note; Fowler* v. *Fowler, 4 De G. & J. 250, 264, and note; Paulison* v. *Van Iderstine, 1 Stew. Eq. 306, 310; Morris* v. *Penrose, 11 Stew. Eq. 629, 630; Henderson* v. *Stokes, 15 Stew. Eq. 586, 589.*

The negotiations for the exchange of the two properties were

had between McClung and Beckett, and were oral. No agreement in writing preceded the making of the deed. Beckett died before the commencement of this litigation, and the only evidence that the agreement made verbally was different in any respect from that set out in the deed is the testimony of McClung. Barker, who drew the deed, and is an intelligent and disinterested witness, testified that the deed was prepared in conformity with Beckett's instructions. Barker and Livermore both testify that McClung saw the deed while it was in Barker's office, and was made aware that the assumption clause was in it. Barker's testimony is that McClung came to his office and said that the deed would not do; that the purchaser objected to that clause, and wanted another deed prepared; that he (Barker) told McClung that Mr. Beckett could not make a deed without that in it. Livermore, who is the private secretary of the mortgagee, testified that he met McClung at Barker's office on another occasion before the deed was delivered, and that he and McClung read the deed over and read the assumption clause, and that McClung asked him whether that would compel Stone to pay the mortgage. McClung's testimony is in conflict with the testimony of Barker and Livermore in several matters most material in this controversy. To justify the reformation of a deed executed, delivered, accepted and acted upon, on the ground that it did not correctly express the agreement made by the parties, the proof must be clear and convincing, and upon testimony that is unexceptionable, both with regard to the agreement actually made by the parties and the mutuality of the mistake through which a different agreement was put in the deed. In *Rowley* v. *Flannelly, 3 Stew. Eq. 612, 614,* Vice-Chancellor Van Fleet says: " When the evidence, in demonstration of mistake, is doubtful or equivocal, or strongly contradicted, so that it is impossible for the mind to reach a strong conviction as to the truth, the court will not change what is written. * * * Until a mistake has been established by such force of proof as leaves no rational doubt of the fact, no change in the writing sought to be reformed is entitled to be called a correction."

The rule of evidence, with respect to the character and degree

Green v. Stone.

of proof exacted, in order to substitute another contract in the place of that contained in a written instrument, as stated by Vice-Chancellor Van Fleet, has frequently been declared and adopted. *1 Story Eq. Jur. § 157; Cummins* v. *Bulgin, 10 Stew. Eq. 476; Henderson* v. *Stokes, 15 Stew. Eq. 586, 588; Hupsch* v. *Resch, 18 Stew. Eq. 657, 662.* A considerable number of cases to the same effect are cited in *15 Am. & Eng. Encycl. L. 650.* The testimony produced by the defendant in this case falls far short of the standard of proof required to expunge from the deed the covenant in question.

In *Vreeland* v. *Van Blarcom, 8 Stew. Eq. 530, 531,* cited in the opinion below, the defendant for many years had been mentally an imbecile. One Geroe had charge of his affairs as agent and *quasi*-guardian. As such he negotiated an exchange of properties, and caused to be inserted in the deed to the defendant an agreement to assume a mortgage which Geroe himself held. This agreement was placed in the deed without the knowledge or authority of the defendant and without its being required by the grantor. This court vacated the agreement to assume, on the ground that Geroe could not insert such a stipulation in the deed for his personal benefit without the authority of his principal. That decision would be controlling as between McClung and Stone. The facts in the case disclose its inapplicability to this controversy as between the parties to this suit. McClung was not owner of the mortgage now in question, nor was he in this transaction the agent of the mortgagee. He derived no benefit to himself personally by the assumption of the payment of the mortgage by Stone.

The decree should be reversed, and a decree entered in conformity with the prayer of the bill.

The defence was made by answer only. It should have been made by way of a cross-bill. *Miller* v. *Gregory, 1 C. E. Gr. 274; French* v. *Griffen, 3 C. E. Gr. 279; Graham* v. *Berryman, 4 C. E. Gr. 29; Rosenkrans* v. *Snover, 4 C. E. Gr. 420; O'Brien* v. *Hulfish, 7 C. E. Gr. 471, 475; Allen* v. *Roll, 10 C. E. Gr. 164, 165.* And all persons who were interested should have been made parties to the cross-bill. When the object of a cross-

Green *v.* Stone.

bill is affirmative relief, such as would be obtained by the reformation of a deed, in aid of a defence to the suit, persons not parties to the original bill, who are necessary parties to the relief sought, may be made parties to the cross-bill. *Brandon Manufacturing Co.* v. *Prime, 14 Blatchf. 372; 5 Encycl. Pl. & Pr. 650.* In *Randolph* v. *Wilson, 11 Stew. Eq. 28,* Chancellor Runyon said that the defence that an assumption clause was inserted in a deed by mistake should regularly be set up by cross-bill, but that the court had entertained it when set up by answer without a cross-bill when the matter could be satisfactorily tried without a cross-bill. In this case the defence should have been set up by way of a cross-bill, and the representatives of Beckett should have been made parties to it. That two litigations resulted in two decisions of the chancery court, the one directly opposite to the other, upon the same facts and depending upon a liability identically the same, indicates that those rules of practice by which a court of equity seeks to dispose of the entire litigation in one suit whenever it is practicable to do so, should have been conformed to in this case. No objection was made to the mode in which the defence was set up in this suit, and reference to it has been only to exclude an inference that it is approved by this court.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGART, NIXON—12.

*For affirmance*—None.