In this suit the complainant sets forth three causes of action. The first, to reform the description of one of the parcels of land described in complainant's mortgage, as well as the deeds in the chain of title; the second, to foreclose complainant's mortgage as reformed; the third, to reform an insurance policy issued by the Camden Fire Insurance Association which is alleged to improperly describe the property destroyed by fire, insured under that policy.
The mortgage is in the sum of $3,000, and it is not disputed that that sum, with interest from June 10th, 1932, is due complainant. The parcel of land in question is situate *Page 441 
on the southeast side of Bell avenue, the beginning point being stated to be three hundred nineteen and fifteen-one-hundredths feet southwestwardly from Rudderow avenue, while the complainant alleges that such beginning point is, in fact, three hundred forty-nine and fifteen-one-hundredths feet southwestwardly from Rudderow avenue.
The evidence establishes that Camden County Garden Farms Company by deed dated November 1st, 1918, conveyed to Stanley Bisaga, one of the defendants, certain lots or parcels of land at Mt. Ephraim, in which deed the land in question is included; that afterwards, Bisaga conveyed to Theresa Bisaga, his mother, by deed dated November 21st, 1918, all the land which he acquired from the Camden County Garden Farms Company except a parcel of land thirty feet in width, upon which there was erected the northeast half of a double dwelling, which is the same land and dwelling house now contended to be the land mortgaged by incorrect description to complainant. After this conveyance a plan showing the location of the house and party wall of Theresa Bisaga on lot 79 on plan of One Acre Farms at Mt. Ephraim, was prepared by Louis A. Croxton, a civil engineer, from a survey made in November, 1919. This plan, which is in evidence, shows the double dwelling, and the beginning point of the lot now in dispute is shown on that plan to be three hundred nineteen and fifteen-one-hundredths feet southwestwardly from the corner of Bell and Rudderow avenues. This plan as prepared by Croxton mistakenly showed the wrong distance for the beginning point of this lot. This is established by the testimony of Mr. MacNamara, an engineer who testified to making a survey in which he located the monuments shown on the Croxton map, but thirty feet southwestwardly from the point indicated on the Croxton plan, so that the descriptions appearing in the various deeds and mortgage involved in this suit undoubtedly originated because of the error of Croxton in his plan. The records disclose that very shortly after the making of this map and on December 1st, 1919, Theresa Bisaga and her husband reconveyed to her son Stanley Bisaga the same premises which he had conveyed to *Page 442 
her by his deed, so that the title went back to Stanley Bisaga to all the lands he purchased by his original deed, including the double dwelling house which had in the meantime been erected thereon. I am satisfied that the error in this conveyance was made because of the error in the Croxton plan. Then Stanley Bisaga conveyed to Edward and Caroline Bisaga, by deed dated December 17th, 1919, a parcel of land, being that parcel now in dispute covered by complainant's mortgage. It is established by the testimony that that purchase from Stanley Bisaga by Edward and Caroline Bisaga, was the northeast half of the twin dwelling house, and that they moved into this house, occupied it until 1930 when a deed therefor was made by them to Anna Balassaitis, one of the defendants, who occupied it from then until the house was damaged by fire. It is clear, I think, that the description of the location of this house and lot was made up from the Croxton plan and was therefore erroneous. On the same day, Stanley Bisaga made another deed to his mother, Theresa Bisaga, in which he conveyed the remaining lands, described from the erroneous Croxton plan. It is established that Edward and Caroline Bisaga occupied this northeast half of the double dwelling house as a home and continued to occupy it all during the time they assume to have owned it, and on January 7th, 1922, executed a mortgage to Hedding Building and Loan Association in the sum of $600. It is disclosed that the latter mortgage was intended to cover this dwelling house and lot but the same erroneous description appeared in the mortgage as in the deed, but the testimony establishes clearly, I think, that the Croxton map was again followed; the Bisages were occupying this dwelling at that time and it was established by the testimony of the officers connected with the building and loan association that that was the property intended to be mortgaged, and this further appears by the application for the loan, which was offered in evidence. The building was inspected by Mr. Maloney, acting for the association, and the property was occupied by the Bisagas at that time. Edward and Caroline Bisaga sold this dwelling house and lot to Anna Balassaitis and she and her family *Page 443 
moved into the property, a deed was executed to her on June 10th, 1930, and the second tract in that deed is for the same property and is the same description as in the deed from Stanley Bisaga to Edward and Caroline Bisaga. Anna Balassaitis and her husband executed to complainant the mortgage now under foreclosure. The double dwelling house, the northeast part of which is the premises in question, was almost completely destroyed by fire. It was sometime after this fire that it was ascertained that this house and lot were erroneously described in the various deeds and mortgages.
In order that there should be a reformation of the description in the deeds in the chain of title as well as in the mortgage under foreclosure, it must be established that the mistakes made were mutual, that is, reciprocal and common to all parties, where all alike were under the same misconception. Green v. Stone,54 N.J. Eq. 387.
There is no doubt of the mistake; none of the parties became aware of the mistake until after all the deeds and mortgages in question had been executed and delivered. The mistake having originated by reason of an erroneous plan or map, it seems to me that it is such a mistake as could be nothing but a mutual one. The lot which was actually described is a vacant lot upon which no buildings had been erected. It is not necessary for the purpose of establishing mutuality of mistake that there should ever have been a discussion among the parties with relation to it. The mutuality of this mistake is sufficiently evidenced by the way in which it originated. All the parties in interest are parties to this cause and the complainant is entitled to have the deeds in the chain of title, as well as the mortgage, reformed, in accordance with the prayer in the bill.
The remaining question to be determined is contained in the third cause of action, that is, the reformation of an insurance policy issued by the defendant Camden Fire Insurance Association. At the time of the conveyance by the Bisagas to Balassaitis, at which time the mortgage in question was executed and delivered to complainant, the complainant's solicitor acted as attorney for all the parties interested; he *Page 444 
was also at that time an agent of the defendant Camden Fire Insurance Association. He was requested to have the dwelling house insured. He communicated with the insurance company, a policy was issued, but this policy described the dwelling house in question as on a lot beginning three hundred nineteen and fifteen-one-hundredths feet from Rudderow avenue as it had been described in the deeds and in complainant's mortgage. The company, after the fire, proceeded to adjust the loss. The adjustment went so far that a draft was drawn, dated April 20th, 1932, in the sum of $1,854.40, which stated that it was in full settlement and compromise of all claims for the damage sustained under this policy No. 62580. The company also paid a loss on household furniture, under another policy; the latter policy, written several months later, however, did not describe the lot in the same way, but as No. 315 Bell avenue, although it was the same house. The insurance company, by correspondence and other written documentary proof, apparently recognized this northeast half of the twin dwelling house as the dwelling insured under its policy. There was a dispute between the complainant and the fire insurance company as to the amount of the loss, which resulted in a suit being commenced by complainant in the New Jersey supreme court against the company to recover under the policy. It is quite obvious that the insurance company did not intend to issue a policy on a non-existent dwelling house. It accepted the premium, wrote the policy in accordance with the information furnished by its agent, who was also the agent of the complainant, and the dwelling house thus insured and incorrectly described in the policy was the only dwelling house which could have been in mind when this policy was written, and I feel assured that the situation with reference to the reformation of the insurance policy is the same in all essentials as that with reference to the deeds and mortgage. The mistake could be nothing but a mutual one because of the circumstances. The complainant is entitled to have the insurance policy reformed and is further entitled to have defendant fire insurance company restrained from interposing in the supreme court a defense that the *Page 445 
policy does not affect the premises in complainant's mortgage. The complainant is entitled to a decree for the sale of the mortgaged premises.