The complainant says that on September 20th, 1929, after several weeks of negotiating, the defendant contracted in writing to deliver gasoline and other products to him at a fixed price, for a period of one year. When the terms of the contract were being discussed, complainant asked the representatives of the defendant company to give him the exclusive right to sell its products in the city of Newark, in a zone described as follows: "A zone of one and one-third miles on three sides of the said station, and because of the fact that northerly of the said station exists the Passaic river, and one and one-third miles northward to be divided up into the three other directions, so that the territory as proposed was a territory running from South street along route 25 to Raymond Boulevard, up Raymond Boulevard to complainant's station, which is on the corner of Market and Jefferson streets, then west one and one-third miles and thence south to South street;" the area was not mentioned in the contract; complainant said the company's representatives assured him that if he would sign the agreement, minus the description, the defendant would attach a rider to it specifying the area and giving him the exclusive right to sell its products within it. Accepting such assurances as true, complainant says he submitted the contract to his counsel, and subsequently signed it in his service station, and handed it to Magee, a salesman, who acted for the defendant in the negotiations. Magee brought it to the company's office and it was, without change, there signed by the defendant's district manager, Paul W. Reifsnider. A copy of the agreement, executed as aforesaid, was sent, or delivered, to the complainant, who, discovering that no rider was attached thereto, mentioned its omission to Magee. Complainant and his brother, James Santamaria, testified that Reifsnider was present at the complainant's service station and gave assurances that the desired rider would be attached to the contract. Reifsnider denied this and testified that he never saw the complainant, nor his brother, James, until the date of the hearing herein. He further stated that he was never at the *Page 28 
complainant's service station, and that he never told the complainant, nor his brother, James, nor any other person, that the said rider would be attached to the contract.
At a rehearing, granted upon a petition of the complainant to present testimony of Magee, who was not present at the original hearing, the complainant and his said brother, James, again took the stand and testified that since the original hearing they discussed the facts and circumstances of the negotiations of the said contract with Magee; that such discussion convinced them that their testimony, at the first hearing, about Reifsnider being present at the service station and taking part in the negotiations, was entirely erroneous. Magee's testimony for the complainant bears all the earmarks of a biased, prejudiced and unreliable witness. He has been out of the defendant's employ three or four years. Under cross-examination he admitted that shortly before the original hearing, he called at the office of defendant's counsel and declared he would testify for the defendant if he were paid the sum of $100; he stated that the company owed him that sum for wages. Pressed by counsel for details, his replies were most vague and uncertain, and were followed by the assertion that he had never demanded or made any attempt to collect such a claim from the defendant before, or since he had left its employ. When he left defendant's counsel, he declared he discussed the matter with his wife and then decided he would not appear as a witness for the defendant, but would tell the truth. A short time after the hearing he appeared at the complainant's service station to purchase gasoline; he stated he there met and conversed with the complainant, and then agreed to appear as a witness for him in these proceedings. His testimony not only lacks clarity and sincerity, but it bears the insidious stamp of perfidy. It will do no violence to the truth to characterize it "an unholy product of the auction block."
Reifsnider testified that the contract as appearing in evidence, comprised the thoughts, and expressed the views, of the parties to it. I was impressed with his testimony and I believe his story. It is my belief that he did not represent *Page 29 
that the rider would be attached to the contract, as the complainant and his witnesses have alleged. Reifsnider's story was clear and direct, while the complainant and his brother, James, labored under an admitted faulty recollection of the facts covering the negotiations. Riehl v. Riehl, 101 N.J. Eq. 15.
Assuming, but not admitting, the facts as related by the complainant are true, I do not conceive how he is entitled to the relief prayed for in his bill. To be entitled to the reformation he seeks, he must establish in the clearest manner that the intention to which he desires the instrument to be made conformable continued concurrently in the minds of all parties, down to the time of its execution, and he must be able to show exactly and precisely the form to which the instrument ought to be brought. This he has not shown; he and his witnesses have presented no clear story of the facts.
Reformation is the means by which the instrument is made to conform to the intention of the parties. It is applicable to cases of mistake and fraud. If there is mistake on one side and fraud on the other, reformation is the remedy. Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. Cummins v.Bulgin, 37 N.J. Eq. 476. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where it arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake. The mistake must be one that is mutual, material and not induced by negligence. Swedesboro Loan and Building Association v. Gans,65 N.J. Eq. 132; Paulison v. Van Iderstine, 28 N.J. Eq. 306.
Certainly there was no mistake apparent in the instant case; the complainant was cognizant of the contents of the agreement, he wanted an insertion or an addition made which the defendant's representative had no apparent authority to make, and did not make; but despite the omission, he signed *Page 30 
the contract with full knowledge of its recitals, and of the lack of them, and acted under no misapprehension, delusion or mistake whatever. He had the benefit of legal advice before signing the instrument and is presumed to have known just what the agreement entitled him to.
Vice-Chancellor Van Fleet, in the case of Roemer v. Conlon,45 N.J. Eq. 234, in dismissing the bill of complaint, said:
"I think it may well be doubted whether any mistake is shown here, such, at least, as equity can correct. On the complainant's own showing, it appears that he knew just what his bargain was, and just how much of it was set out in the contract, and just what part was omitted. When he signed the contract, he knew it did not contain the whole bargain. He did not sign it believing that it contained something which it did not contain. There was no mistake as to what the contract contained. He acted with full knowledge — he knew exactly what he was doing, but it is possible that he did not fully understand the legal effect of his act. If that is so, he may have committed a mistake, but his mistake is one of law rather than of fact. Whether a mistake of this kind can be corrected in equity is a question upon which the authorities are not agreed. A discussion of that question is, however, not necessary to a decision of this motion.
"The equity on which this part of the complainant's case rests is fully denied. The defendant swears that it was distinctly understood that the complainant should furnish steam without charge, and that the contract contains the whole of the agreement on that subject. He is corroborated by the complainant's bookkeeper. The most decisive evidence on that point, however, is that which the circumstances attending the execution of the contract, as described by the complainant himself furnish. I cannot believe that the complainant would have signed a contract which he knew, and which the other party to it admitted, was incomplete in an important particular, especially in view of the fact that the omitted term was one favorable to the complainant, and which he would *Page 31 
naturally feel that the contract should contain in order to make his rights as secure as the contract made those of the defendant."
Equity will reform a contract in the case of a mistake of one party accompanied by fraud or other inequitable conduct by the other party. Forman v. Grant Lunch Corp., 113 N.J. Eq. 175.
Where there is a unilateral mistake, but no fraud, reformation will be denied. Whelen v. Osgoodby, 62 N.J. Eq. 571.
The case of Administrators of Ligon v. Rogers, 12 Ga. 281,
is, in principle, almost on all fours with the instant case. In the headnote appears the following:
"Where a bill was filed to correct and reform a written agreement, signed by the parties, on the ground that a material portion thereof was omitted to have been inserted therein by mistake, and then it appeared on the trial that the complainant knew at the time the written agreement was executed, that the alleged omitted portion of the agreement was not in it, but relied on the promise of one of the parties attorneys to carry that part of the agreement into effect; held, that it was not such a mistake in the written agreement, as a court of equity could correct, and specifically enforce when corrected."
The court, in dismissing the bill for reformation, said:
"The instrument contains the terms of the agreement with this exception: that Job Rogers was to have the right to point out property to be levied on * * *. Witness wrote the instrument in the hurry of business and omitted to put the above in it, through mistake * * *. Witness then stated in the persence of Atkinson and Rogers, that as the instrument was written, it would not be worth while to write it over again, he would carry out that part of the agreement to which both parties assented."
Again:
"Now the allegations in the complainant's bill is, that so much of the agreement made between the parties, as relates to levying on the property * * *, was left out of the written instrument signed by the parties, by mistake * * *. *Page 32 
The general rule is, that the written instrument furnishes better evidence of the deliberate intention of the parties to it than any parol evidence can supply; and the general rule must prevail, unless the complainant can bring his case within some one of the exceptions to that general rule, by showing by clear and satisfactory evidence, that either by accident, fraud or mistake, the written instrument does not contain and express, at the time of its execution. * * * The question is not as to what passed in conversation between the parties before the agreement was reduced to writing, but the question is, whether the instrument of writing signed by the parties, contains all that they intended should be embraced in it, at the time of its execution. Was any portion of the agreement between the parties left out or omitted by mistake, without their knowledge or consent? * * * If the alleged omitted portions of the agreement was left out of the written instrument, at the time of its execution, with the knowledge and consent of Rogers he relying on Mitchell to execute the agreement, instead of having it incorporated in the written instrument, then, there is no mistake in the execution of the instrument, and a court of equity will not reform it; for the simple reason, that the written instrument is just what the complainant knew and intended it should be, at the time of its execution."
Reformation will not be granted unless there is clear error. Vice-Chancellor Grey in Anderson v. Anderson Food Co., 66 N.J. Eq. 209,
said: "Courts of equity do not grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error." The same rule was enunciated in Giammares v. Allemannia Fire Insurance Co.,91 N.J. Eq. 114.
"The demonstration of mistake must be clear and satisfactory, such as produces a strong conviction of the truth." UniversalSecurity Co. v. American Pipe and Construction Co., 95 N.J. Eq. 752; Brook Avenue Land Co. v. Cadillac Development Co.,101 N.J. Eq. 55.
In Shenandoah Valley Railroad Co. v. Dunlop, 86 Va. 346,
the supreme court of appeals of Virginia, among other things, said: *Page 33 
"The authorities all agree that equity has jurisdiction to reform written instruments into two well defined classes of cases only, viz.: (1) Where there has been an innocent omission or insertion of a material stipulation contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. But so great and obvious is the danger of permitting the solemn engagements of parties, when reduced to writing, to be varied by parol evidence, that in no case will relief be granted except where there is a plain mistake, clearly made out by satisfactory and unquestionable proofs. According to some of the cases there must be a certainty of the error."
I am convinced that there was neither fraud nor mistake, nor error exhibited in the transaction between the complainant and the defendant, and I do not believe that any agent or representative of the defendant with apparent authority, made any representation to the complainant that left him under some erroneous conviction, but for which, he would not have signed the contract.
It was not established that Magee, the salesman, had apparent authority to bind the defendant; he appeared to be no more than a messenger; he had to take it to other officials of the defendant for approval and signature, and his testimony, as a witness for the complainant, clearly indicates that the defendant never agreed to give the complainant the exclusive right of sale of its products within the described area. His testimony, taken in its most favorable light for the complainant, shows the defendant was reluctant to accede to complainant's demand and that the defendant instructed him to delay action and to convey to complainant the impression that he would eventually get the rider, when in fact there was no intention of giving it. I place no faith in Magee's testimony and I believe it is highly colored and exaggerated; the sum total of it marks him a self-acknowledged agent of misrepresentation. The contract in evidence, in my opinion, forms the entire agreement of the parties to it.
In Harkavy v. Dreamland Park Co., 98 N.J. Eq. 59,
Vice-Chancellor Backes said: *Page 34 
"There, of course, can be no reformation embodying in the lease the general manager's promise that the leased premises should be the parking space as shown on any map thereafter adopted by the company. The promise was made contemporaneously with the execution of the written agreement, and the latter prevails. The omission to include it in the written document was not the result of a mutual mistake."
Vice-Chancellor Emery, in the case of Birch v. Baker,81 N.J. Eq. 264, said:
"On the second issue, the alleged omission of the agreement from the written contract by mistake, which is the equitable ground of relief relied on for protection against the statute, I conclude on the proofs that the evidence shows that the agreement in its present form was the agreement intended to be signed by the complainant, as well as by the other parties of the first part and the defendant, and that if there was any misapprehension or mistake on the part of the complainant in reference to the agreement with the other parties as to the compenastion for his lands, it was not a mistake as to the promise for payment being either intended to be or actually being in the agreement at the time it was signed."
Under the circumstances, for the reasons herein expressed, I shall advise a decree dismissing the bill.