8 N.J. Super. 289 (1950)
74 A.2d 331
JOHN TOTH, JR., AND VICTORIA TOTH, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
EDWARD VAZQUEZ AND ANITA VAZQUEZ, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1950.
Decided June 28, 1950.
*290 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. David Mandel, attorney for and of counsel with plaintiffs-respondents, argued the cause.
*291 Mr. John V.R. Strong argued the cause for the defendants-appellants (Messrs. Louis J. Milano and Strong & Strong, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
This is an appeal from a judgment of the Superior Court, Chancery Division, directing reformation of two deeds conveying adjoining premises in South Amboy, New Jersey, to the parties to this issue.
On July 26, 1945, John H. Coyne, executor of the last will and testament of Peter Coyne, deceased, by deed conveyed certain lands and premises to Edward Vazquez and Anita Vazquez, his wife, described as follows:
"All that tract or parcel of land situated in the City of South Amboy, County and State aforesaid in Block Number Twelve which said lots are marked and more particularly distinguished on the recorded map of the City of South Amboy, by the Numbers Fourteen and Fifteen, on said block being Fifty (50) feet in front and rear and One Hundred (100) feet in depth, and bounded westerly by Lot Number Sixteen, northerly by Lot Number Seventy and Seventy-one (70 & 71), easterly by Lot Number Thirteen and southerly by George Street."
On August 24, 1945, John H. Coyne, executor as aforesaid, conveyed certain other lands and premises to Samuel Galinsky and Dora Galinsky, his wife, particularly described as follows:
"Being known and designated as lot number thirteen (13) in Block number twelve (12) on a `Map made and surveyed by John Perrine, Jr., in June 1835, and filed in the County Clerk's Office in New Brunswick, N.J. Said tract hereby conveyed contains twenty-four hundred (2400) square feet and is bounded as follows: Easterly by one foot strip reserved from said lot; Northerly by lot number Seventy two (72); Westerly by lot number fourteen (14) and Southerly by George Street, being the same lot (excepting the strip one foot by one hundred feet) that was conveyed by deed dated the 21st day of January, 1888 from Mary Snyder and husband to Daniel Coyne said deed is recorded in the Middlesex County Clerk's Office in Book 216 of deeds page 376."
The latter described lands were situate to the east of and contiguous to the Vazquez premises. Thereafter, on September 1, 1945, Samuel Galinsky and his wife, conveyed these premises to the Toths.
*292 The Vazquezes moved into their home in February, 1946. They obtained a survey of their property in May, 1946, which disclosed that the westerly side line of the rear portion of the Toths' two-story frame dwelling house encroached approximately two and one-half feet and the fence on the same side extending to the rear line of Toths' property encroached approximately three feet, over on to the Vazquezes' property. Sometime later, plaintiffs removed the fence and a controversy arose when they proceeded to erect a new one on the same line. Defendants constructed a wall along the dividing line disclosed by their survey, intended to be used as the rear wall of their garage.
The plaintiffs contend that the parties purchased their respective properties based upon their physical boundaries, and in their complaint prayed for reformation of the deeds and the removal of defendants' garage wall. The defendants counterclaimed for damages, for trespass and removal of plaintiffs' building and drain pipe.
All parties participating in the conveyances above-mentioned were joined as defendants. On motion, the complaint was stricken as to defendants Coyne, Wolpin (the attorney who prepared the conveyances and transacted the business connected therewith), and Galinsky. No appeal was taken therefrom.
Defendants contend that under Rule 3:56 the complaint should be stricken as insufficient in law; that in conveying lots 14 and 15 to them, the grantor divested himself of his entire interest in that property and could not be heard to speak in derogation of his grant, citing Blumberg v. Weiss, 129 N.J. Eq. 34 (E. & A. 1941). Furthermore, that when grantor subsequently sold his adjacent property and it was thereafter resold, the last mentioned purchaser stands in no better position than the original grantor.
The plaintiffs contend that their survey, based upon a different map and beginning point, placed their property line along the fence line as the parties anticipated; that the parties purchased on the basis of the physical boundaries and occupied their respective properties for some months without *293 question  all of which evidences mutual mistake and that reformation of the descriptions in the deeds was properly decreed by the Chancery Division.
At the argument of the appeal, the defendants stated their willingness to allow the plaintiffs an easement for the lifetime of the Toth building on that portion which extends over their property line, to which proposal plaintiffs acquiesced without prejudice to their asserted position for an affirmance of the judgment otherwise. The appeal was then argued as to the relief to be granted with respect to the boundary lines of the respective properties not encompassed within the bounds of the agreed easement for the building.
The trial court found that the defendants' survey was the correct one. This survey shows defendants' lots to be 50 feet in width and 100 feet in depth and that plaintiffs' building encroaches upon defendants' property approximately 2 1/2 feet and the fence 3.1 feet on the westerly side thereof.
Regarding the equitable remedy of reformation, it was held in Santamaria v. Shell Eastern Petroleum Products, Inc., 116 N.J. Eq. 26 (Ch. 1934), at p. 29, that:
"Reformation is the means by which the instrument is made to conform to the intention of the parties. It is applicable to cases of mistake and fraud. If there is mistake on one side and fraud on the other, reformation is the remedy. Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. Cummins v. Bulgin, 37 N.J. Eq. 476. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where it arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake. The mistake must be one that is mutual, material and not induced by negligence. Swedesboro Loan and Building Association v. Gans, 65 N.J. Eq. 132; Paulison v. Van Iderstine, 28 N.J. Eq. 306."
And further at p. 32:
"Reformation will not be granted unless there is clear error. Vice-Chancellor Grey in Anderson v. Anderson Food Co., 66 N.J. Eq. 209, said: `Courts of equity do not grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error.' The same rule was enunciated in Giammares v. Allemannia Fire Insurance Co., 91 N.J. Eq. 114.
*294 "`The demonstration of mistake must be clear and satisfactory, such as produces a strong conviction of the truth.' Universal Security Co. v. American Pipe and Construction Co., 95 N.J. Eq. 752; Brook Avenue Land Co. v. Cadillac Development Co., 101 N.J. Eq. 55."
Cf. Parrette v. Citizens' Casualty Co. of N.Y., 128 N.J. Eq. 206 (E. & A. 1940); Pomeroy's Equity Jurisprudence, § 1376, pp. 1000-1.
The proofs proffered by the plaintiffs do not support the contention that the parties purchased their respective properties on the basis of their physical boundaries. Furthermore, it is to be noted that the parties to this action did not become seized of their respective titles by means of a transaction between them, nor through a common grantor. Vazquezes purchased their property from John H. Coyne, executor under the will of Peter Coyne, and Toths purchased their property from Samuel Galinsky and Dora Galinsky. The acquisitions of title took place at different times and were not in any manner related to each other. Consequently, the question of mutual mistake could not arise. That the predecessors in title did not labor under a misconception of what they were conveying at the time their instruments of title were executed, clearly appears from the court's dismissal of them as parties to the action.
In Biliunas v. Balassaitis, 115 N.J. Eq. 440 (Ch. 1934), at p. 443, it was stated:
"In order that there should be a reformation of the description in the deeds in the chain of title * * * it must be established that the mistakes made were mutual, that is, reciprocal and common to all parties, where all alike were under the same misconception. Green v. Stone, 54 N.J. Eq. 387."
The defendants' offer and plaintiffs' acceptance of the easement for the lifetime of plaintiffs' building in that portion of defendants' property encroached upon by plaintiffs' building, effectively disposes of that phase of the controversy. Therefore, with the exception of the agreed easement for the building, the judgment is reversed, with costs to defendants.
The cause is remanded to the trial court for such further proceedings as may be in conformity with the foregoing determination.