Rowley *v.* Flannelly.

<br>

REUBEN ROWLEY

*v.*

MICHAEL FLANNELLY.

1. As a general rule, the acceptance of a deed discharges the vendor from his covenant to convey, though the deed may not, in essential particulars, conform to the executory contract.

2. But this rule will not be applied to a case where the vendee accepts a deed, conveying less than he is entitled to, under a mistake or through the fraud of the vendor.

3. Equity will reform written instruments for the correction of mistakes, but to warrant the exercise of this power, the court requires clear and convincing proof.

4. In cases of mutual mistake the court will not reform, but rescind.

On final hearing, on bill and answer, and proofs taken orally before the vice-chancellor.

*Mr. E. A. S. Man* and *Mr. B. Williamson,* for complainant.

*Mr. R. W. Parker* and *Mr. C. Parker,* for defendant.

Rowley *v.* Flannelly.

THE VICE-CHANCELLOR.

The object of this suit is to reform a deed made by the defendant to the complainant. The deed bears date August 2d, 1870, and the bill was filed February 17th, 1874. The defendant, on the 29th day of June, 1870, made a public sale of building lots at Tenafly, N. J. Some time prior to the sale, and for the purposes of the sale, the defendant caused his lands at Tenafly to be surveyed and laid out into streets and building lots, and lithographic maps to be made, showing the locations and dimensions of the lots to be offered for sale. These maps, with the auctioneer's advertisement of the sale attached, were freely distributed, both prior to the sale and on the day of sale. The complainant purchased the first lot sold, and, as delineated on these maps, it extended from Hudson avenue on the south, to Union avenue on the north. He claims to have purchased, believing the lot was sold as it was described upon the maps, and also relying upon an alleged public declaration made by the auctioneer, at the time he offered the lot, that it extended from Hudson avenue to Union avenue. His deed conveys the lot to the centre line of a brook running across its rear. The rear or northern line, as fixed by the deed, is sixty-six feet south of Union avenue at the intersection of the north and west lines of the lot, and sixteen feet south thereof at the intersection of the north and east lines. The strip lying between the centre line of the brook and Union avenue is the subject matter in dispute. The complainant insists that his deed should be so reformed as to include this strip.

There can be no doubt that, if the complainant has shown by sufficient proof that his deed does not embrace all the land comprehended within his contract, and that he accepted his deed in ignorance of his rights, or under a mistake as to its contents, that he may have relief in equity. It is true, as a general rule, that the acceptance of a deed discharges the vendor from the covenant or promise to convey, though the deed may not, in essential particulars, conform to the executory contract. An executory contract, until finally per-

40

formed, is subject to such alterations and modifications as the parties may agree upon, but when it is finally consummated, and a deed, made in pursuance of it, is accepted, it is presumed, as a matter of law, that the deed gives full expression to the final purposes of the parties, in respect to that part of the contract which it purports to execute. *Long* v. *Carpenter's adm'r*, 5 *Vr.* 116. But this doctrine has no application to a case where the deed conveys only a part of the land agreed to be conveyed, and the vendee does not intend to relinquish any part of his purchase, but, through mistake, or the fraud of the vendor, accepts a conveyance of less land than he is entitled to by his contract. *Conover* v. *Wardell*, 5 *C. E. Gr.* 266, 271.

The power of the court to give relief of the nature sought in this case is undoubted. It stands among the most ancient of its powers, but to warrant its exercise the proof must be very clear and convincing. When the evidence, in demonstration of mistake, is doubtful or equivocal, or strongly contradicted, so that it is impossible for the mind to reach a strong conviction as to the truth, the court will not change what is written. *Story's Eq. Jur.* 152, 157; *Graham* v. *Berryman*, 4 *C. E. Gr.* 29, 35; *Zane* v. *Cawley*, 6 *C. E. Gr.* 130; *Loss* v. *Obry*, 7 *C. E. Gr.* 52, 54; *Burgin* v. *Giberson*, 11 *C. E. Gr.* 72. Until a mistake has been established by such force of proof as leaves no rational doubt of the fact, no change in the writing sought to be reformed is entitled to be called a correction.

Do the proofs show, with sufficient force to entitle the complainant to a decree, that he accepted the deed in question under a mistake as to its contents, or under a misapprehension as to the location of the rear line of his lot as fixed by the deed? He purchased by oral contract; at least no written contract has been shown. The lithographic maps did not show the brook, and the complainant, in his bill, says that, until after he had accepted his deed, he had no knowledge whatever that a brook ran through the lot. He swears that, when the lot was offered for sale, the auctioneer

Rowley v. Flannelly.

stated that it extended from Hudson avenue to Union avenue, and two of his witnesses also testify that they heard the auctioneer say, on the same occasion, that the lot had two fronts, one on Hudson avenue and the other on Union avenue, and a third swears that, as he now recollects, he heard nothing said about a brook, and that he understood the lot was sold according to the map. Four witnesses on the part of the defendant all swear, with more or less certainty, that the auctioneer publicly announced, when the lot was first offered, that it would be sold to the brook, and not to the road. The defendant declares, with great positiveness, that he directed that this announcement should be made, and that he heard the auctioneer make it in such manner that everybody must have heard it. Unless some satisfactory reason has been shown why this evidence should be rejected as false, it clearly establishes the fact that such an announcement was made. Nothing has been shown which will justify its rejection. Possibly the complainant did not hear the announcement; if so, and he bid in ignorance of it, relying upon the map, then a case of mutual mistake would be shown, such as would justify a rescission of the contract. No one shall be forced to give that price for a part only which he intended to give for the whole; nor shall the other be obliged to sell the whole for what he intended to be the price of part only. *Calverley* v. *Williams*, 1 *Ves.* 210; *Stapylton* v. *Scott*, 13 *Ves.* 425; *Fry's Spec. Perf.* 308. A case appropriate to such relief is not, however, made by the bill.

But the whole of the evidence bearing on this question has not yet been mentioned. There are circumstances in the conduct of the complainant which render it almost impossible to believe that he understood, at the time of the contract, that he was purchasing a lot bounded by Union avenue. When his deed was first presented to him, it described the rear boundary of his lot as the southerly line of a brook. After giving the deed a careful examination, he asked to have this line changed to the middle of the

brook, and also that certain covenants, intended to restrain his complete dominion over the lot, should be erased. Until he read the deed, he says, he did not know there was a stream on the lot. He is a lawyer, whose professional career, at the time this transaction occurred, had covered a period of nearly half a century. He is to be presumed to have been fully aware of the controlling force which the law gives to fixed monuments in the description of lands. The line was changed in conformity to his request, and the objectionable covenants expunged. The complainant says the defendant readily consented to the change, while the defendant, on the contrary, says, that at first he refused to allow any change to be made, stating that he had only sold the lot to the stream, and that he would not convey any part of the stream; that thereupon the complainant proceeded to argue with him, saying they were old friends, that the water would be valuable to him, and would make no difference to the defendant. The defendant says he at last consented, on condition that the complainant would pay for a new deed. This statement is corroborated in its most material point. The only person present at this interview who has been examined as a witness, says that he remembers there was a discussion between the parties as to one of the boundaries, and that after they came to an agreement upon the subject, he altered the deed to make it conform to their understanding. It is undeniable, upon the complainant's own showing, that he accepted his deed fully understanding that it fixed the middle of the brook as the rear line of his lot. It is also undeniable that the location of that boundary was the subject of discussion and arrangement at the time of the delivery of the deed. In the face of these facts, no rational contention can be made that the complainant accepted his deed under a mistake as to the location of that boundary. He dealt with the matter as one perfectly familiar to him; he neither professed ignorance, nor sought information, nor did he so much as intimate in the remotest manner that he had purchased with the understanding that

Rowley *v.* Flannelly.

his lot extended to Union avenue. Was he under any mis-apprehension as to the location of the brook? He says he supposed it ran along Union avenue. But why? No such representation had been made, and, if he speaks truthfully, until that moment he did not know that there was a brook on the lot, and he then believed that his contract gave him a right to a conveyance through to Union avenue; yet, when his deed is presented, and this boundary becomes the subject of discussion, so that his attention is specially directed to it, he does not even intimate that he understood Union avenue to be the boundary by which the lot was sold; he asks no information respecting the location of the brook, but treats it as a thing perfectly familiar to him, and as a well-understood landmark in his contract of purchase. His conduct at this important juncture was just precisely what it would have been had he understood that his con-tract gave him merely a right to a conveyance to the brook. It stands as a strong confirmatory witness of the truth of the defendant's contention, that having conveyed to the com-plainant all the land he is entitled to under his contract of purchase, he has, therefore, no just claim to the aid of this court.

Under this view of the case, the alterations made in the original map, by direction of the defendant, were not only free from any suspicion of an evil purpose, but were neces-sary to prevent confusion and a correct representation of the rights of the parties.

The bill must be dismissed, with costs.