THOMAS SARDO, complainant-respondent,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, defendant-
appellant.

[Submitted May term, 1926.    Decided October 18th, 1926.]

1. A written contract for insurance will not be reformed for mistake unless that mistake was mutual, and each party thereto was under the same misconception as to the terms of the written instrument.

2. Where an agent of an insurance company requested the company to issue a policy of insurance covering theft of jewelry. and the company issued a policy covering securities, it will not, in the absence of fraud, be reformed to cover jewelry on the application of the assured unless it clearly appears from the evidence that there was a mutual mistake on the part of both parties to the contract, even though the agent of the company procuring the policy assumed that it covered jewelry.

3. Where an assured could have protected himself by examining the contents of a written policy of insurance against representations made by agents of the company, he cannot, in the absence of fraud, have such policy reformed to include such representations made by the agent, unless the company, with full knowledge of such representations, ratified them.

On appeal from the court of chancery from an opinion advised by Vice-Chancellor Lewis, whose opinion is reported in 98 N. J. Eq. 22.

Messrs. Ward & McGinnis (Mr. Peter J. McGinnis, of counsel), for the complainant-respondent.

Messrs. Wall, Haight, Carey & Hartpence (Mr. John A. Hartpence, of counsel), for the defendant-appellant.

The opinion of the court was delivered by

KAYS, J.

The bill in this case was filed by the complainant-respondent for the purpose of having a policy of insurance reformed which had been issued by the defendant, the Fidelity and Deposit Company of Maryland, to Thomas Sardo, the complainant-respondent. It appears from the proofs in this case that Thomas Sardo, the complainant, desired to obtain insurance against theft on his stock of jewelry in a store in the city of Paterson, New Jersey, which business was there conducted by him. Sardo applied for such insurance to one Lederer, who took him to a man named Mellor Newman. Newman, whose office was in the city of Paterson, was an agent for the defendant company. Newman told the complainant that he had authority to write burglary insurance, only, and that he would confer with the company concerning the kind of policy which Sardo desired. It appears that the issuing office of the company for the Paterson district was under the management of one Brush at Newark, New Jersey. Brush, prior to the issuance of the policy, visited the complainant's place of business for the purpose of investigating the risk. The company, after these negotiations with the complainant, through the several agents, issued a policy of insurance covering money and securities of the complainant, but not including jewelry. Mellor Newman received the policy, examined it, observed its language and scope, but concluded that, as he had applied to the company for a policy covering jewelry, the words "money and securities" embraced within their meaning also jewelry. Newman turned over this policy to Lederer, who was not an agent of the company, but evidently an insurance broker with whom Sardo transacted business. Lederer did not examine the policy, but gave it to Sardo, and Sardo did not read it, but assumed that it covered jewelry. In this policy, which was delivered to Sardo, the word "securities" is defined as follows:

" 'Securities,' as used in this policy, shall mean only such bonds, debentures, checks, coupons, demand and time drafts, promissory notes, bills of exchange, warehouse receipts, bills of lading, express

and postal money orders, certificates of stock and deposit, and other instruments as are negotiable, and as respects which, when negotiated, the assured has no recourse against the innocent holder."

Sardo paid the agent the usual premium or charge made by the company for the kind of policy which was actually issued to him.

Subsequently there was a robbery of Sardo's store, and a considerable amount of jewelry was stolen therefrom. It further appeared that when the complainant, Sardo, applied to the agent of the company for the issuing of the policy that the agent had knowledge that there were no securities in the complainant's store. Basing his opinion largely upon this fact, the vice-chancellor concluded that Sardo, the complainant, was entitled to have the policy. of insurance reformed to include the item of jewelry. Thereupon, a decree was made, striking from the policy the words "securities" and inserting therein the word "jewelry," so that the said policy should read "money and jewelry," instead of "money and securities." From this decree the defendant appeals.

We think the conclusion of the vice-chancellor was erroneous. It is not contended in this case that there was fraud practiced by the defendant upon the complainant, nor did the complainant attempt to rescind the contract. There is no suggestion that the officers of the company or any agent representing them in the writing of this policy understood the policy was to cover anything more than was expressed in it, to wit, money and securities. The rule laid down in this state is, that in order to reform a contract of insurance or other written contract in the absence of fraud on the part of the defendant it must appear that the minds of the parties to said contract have met and that a mutual mistake of the contracting parties has been made in writing out the contract, so that the parties appear to have entered into a contract, which they have not entered into. The reformation, therefore, of such a contract must be to make the written contract to conform to that upon which the minds of the parties have met. It cannot be said in this case that because the complainant assumed that the word "securities" included jewelry,

or because he did not read the policy, that the defendant intended that the word "securities" was to include the word "jewelry." Mr. Justice Depue, in speaking for this court, in the case of *Green* v. *Stone, 54 N. J. Eq. 397,* says: "The doctrine that a contract or deed will not be reformed for mistake, in the absence of fraud or imposition, unless the mistake was mutual, that is reciprocal and common to both parties, where each alike was under the same misconception as to the terms of the written instrument, is the settled doctrine of courts of equity." There is nothing in this case which shows that the defendant ratified the acts or intended acts of the agent, Newman, so that it was thereafter estopped from disaffirming them. Such acts must be shown unequivocally and that they were done with the full knowledge of the principal.

Chancellor Walker, in speaking for this court in the case of the *Crescent Ring Co., Inc.,* v. *Travelers' Indemnity Co., 132 Atl. Rep. 106* (at *p. 108*), says: "Now the indemnity company ratified the agency of Nearing in negotiating the very policy it issued to the Ring company because of such issuance and receipt of the premium therefor, but there is no evidence that it authorized him to negotiate a jeweler's block policy; and his statement that the indemnity company's policy had so broad a coverage was a misrepresentation, detrimental to his principal, and a moral fraud that was not authorized by it, and consequently not binding on the indemnity company." And, again (at *p. 109*), in the same case, he further says: "In this case the Ring company, before accepting the policy, was perfectly at liberty to examine it and to call in a lawyer or an insurance expert to advise them as to the meaning of its terms, and the extent of the indemnity company's liability. This they did not do." And again he says: "\* \* \* there can be no recovery by a plaintiff who could have protected himself by examining into the character of the transaction and the truthfulness of the representations made, unless the defendant, with knowledge, ratifies it; and this the indemnity company did not do." The most that can be said in this

case is that it was the opinion of the agent, Newman, that this policy covered jewelry, although this opinion was not even expressed to the complainant, Sardo, or his broker; and even though this were so it would not bind the company. The assumption of Sardo that the word "securities" included jewelry, or that the policy included the word "jewelry," was, of course, without foundation, and he cannot now obtain the relief he seeks by reason of his unwarranted assumption, nor upon the ground that there was a mutual mistake. The word "securities," as above mentioned, was very clearly defined in the policy, and a reading of the policy would immediately show that jewelry was not embraced within the term "securities." There is no evidence in this case which would indicate that a mutual mistake had been made, or that the company intended to issue any other policy than the policy which was actually issued.

The decree of the court of chancery will therefore be reversed.

*For affirmance*—MINTURN, KALISCH, LLOYD, VAN BUSKIRK, HETFIELD, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, CAMPBELL, WHITE, GARDNER, MCGLENNON, KAYS, JJ. 10.