This is a suit to determine the force and effect of certain riders attached to four policies of insurance issued by the defendant companies. The rider in each case reads as follows:
"The interest in this policy is now vested in John A. Krantz, as owner and not as heretofore. Loss, if any, firstly payable to the Prudential Insurance Company of America as first mortgagee, and secondly payable to Max Klaas as second mortgagee. Non-contribution clause attached."
It is admitted that when the loss by fire occurred, these riders were not actually physically attached to the policies. The policies were in the possession of the Prudential and there was in each instance a non-contributing clause attached in favor of the Prudential.
The claim is made that because these riders were not actually attached at the time of the fire, they are in no sense a part of the policies and should not be considered at all. I do not think this contention is sound, because there were binders issued in the exact terms of the riders, and the delay in delivering the riders themselves was the fault of the insurance companies or their agents.
The question then arises as to what these riders mean, taking into consideration all the surounding circumstances. *Page 523 
Complainant insists that the phrase "Non-contribution mortgageeclause attached" means that there was thereby attached a non-contribution clause not only in favor of the Prudential, but also in favor of the second mortgagee. This interpretation does not square either with the plain meaning of the words or the facts. The words are "a clause," not "clauses," and the fact is that a clause was actually attached in favor of the Prudential, so that the companies complied literally with the terms of the rider.
In the case of Reed v. Fireman's Insurance Co.,81 N.J. Law 523, the court of errors and appeals said (at p. 526):
"Our conclusion is that the standard mortgagee clause creates an independent contract of insurance for the separate benefit of the mortgagee engrafted upon the main contract of insurance contained in the policy itself and to be rendered certain and understood by reference to the policy." Therefore it seems to me that the complainant could not come in under the standard mortgagee clauses attached in favor of the Prudential except by consent of the Prudential. There is no contention that this consent was given.
Complainant's main contention is that he instructed the companies to give him a separate non-contributing clause and believed that the above clause accomplished such an object. As I have said, the rider itself, according to its ordinary and literal meaning, does not do this. Bearing in mind that aclause in favor of the Prudential was actually attached, the conclusion is unavoidable that that clause and that one only was referred to.
In order to reform a contract there must be clear and convincing proof that the instrument does not express the agreement because of mutual mistake. See Crosley v. SuperbRealty, 93 N.J. Eq. 228. In Gross v. Yeskel, 100 N.J. Eq. 293,
the court of errors and appeals said (speaking through Mr. Justice Minturn):
"Reformation as an equitable doctrine proceeds upon the theory that a valid contract was created by the negotiations of the parties, but by mutual mistake is wanting in formal expression or execution, so as to evince the actual intent of the parties," citing cases. *Page 524 
The facts in the case according to the testimony briefly summarized disclose that the complainant did not pay much attention to the matter of the insurance, nor give his attorney any specific instructions. Mr. Schlessinger, whose company acted as broker for complainant, said to complainant's attorney that he would procure mortgagee clauses. The testimony does not disclose what kind of clauses. Mr. Schlessinger turned the matter over to Mr. Crocker. Again there was no specification of the kind of mortgagee clauses. Mr. Crocker turned the matter over to Miss Leach to prepare the endorsements. There is no testimony to show that anyone told Miss Leach what kind of endorsements to prepare. These endorsements or riders were drawn by the representatives of the complainant and not by the representatives of the defendants. I cannot see, therefore, that there was any mutual mistake. It nowhere appears that the companies agreed to any particular kind of rider — only that complainant's attorney wanted Mr. Klaas' interest in his second mortgage protected as his interest may appear. This clause is inserted in the riders.
Complainant says that the companies should have informed him that there was no non-contribution clause for his benefit. Perhaps this would be true if the proofs were that he had demanded such a clause and they had remained silent. However, the testimony fails to disclose that he made any such demand.
In 2 Cooley Briefs Ins. (2d ed.) 1429, the rule is thus stated:
"Though the policy failed to express the intent of the complaining party as to the matter in regard to which reformation is sought, the reformation will not be granted unless there was the same intent by the other party."
Citing numerous cases, the most recent New Jersey case beingKoch v. Commonwealth Insurance Co., 88 N.J. Eq. 344.
It may be that complainant thought he had procured a non-contribution mortgagee clause, but in the absence of *Page 525 
proof that defendants ever agreed to such a clause, it is a case of unilateral mistake for which there is no remedy in equity.
Under these circumstances to decide that the parties actually intended to protect the second mortgage by a non-contributing mortgagee clause would be, in effect, to make a new contract for them. This cannot be done.
In Kupfersmith v. Delaware Insurance Co., 84 N.J. Law 271
(at p. 275), Chief-Justice Gummere says (at p. 275), delivering the unanimous opinion of the court of errors and appeals:
"The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to detriment of another. The judicial function of a court of law is to enforce a contract as it is written."
Another of complainant's contentions is that the language of the riders being ambiguous the maxim "Verba chartarumaccipiunter contra proferentum" applies.
The answer to this is, first, that the language is not ambiguous, but clear and distinct; second, that the riders were prepared by representatives of complainant rather than defendants, and third, that Chancellor Walker, speaking for the court of errors and appeals in Precipio v. Insurance Co.,103 N.J. Law 589 (at p. 591), says that as to standard form policies the maximum has no special application. I will advise a decree dismissing the bill. *Page 526