On June 4th, 1932, the defendant insurance company issued to complainant its policy of insurance indemnifying it, within the limits and the term thereof, against loss by reason of liability imposed upon it by law for damages on account of accidental injuries, including death, suffered by anyone as a result of its occupancy of or tenancy interest in *Page 266 
part of the grade floor of the premises 502 Jackson avenue, Jersey City, New Jersey. On June 24th, 1932, while this policy was still in full force and effect, defendant Snowden sustained injuries while in and about the premises 8-10 Williams street, Jersey City, New Jersey, which was then owned by complainant and by reason of which he subsequently brought suit for damages against it, which action is still pending and undetermined. While so circumstanced, complainant filed its present bill to have the policy in question reformed so as to specify 8-10 Williams street, instead of 502 Jackson avenue, as being the premises covered thereby. The ground upon which this relief is based and sought is not that any fraud of imposition was practiced by the defendant insurance company in the issuance of the said policy, but solely because of the existence of an alleged mutual mistake in correctly or properly describing the premises intended to be insured.
Complainant called but two witnesses. Raymond Sherry, its vice-president and director, testified in substance that, pursuant to his instructions from complainant's secretary, he, on May 27th, 1932, telephoned to the office of Henry S. Mamorstein, Incorporated, insurance brokers, and told Fannie Spector, one of its employes, to procure a liability policy for complainant covering its property at 8-10 Williams street, at the same time mentioning to her 502 Jackson avenue as the complainant's address; that he on or about June 5th, 1932, received the policy in question which he delivered to complainant's secretary without ever examining it until after the accident of June 24th, 1932.
The testimony of this witness with respect to the instructions which he had received from complainant's secretary, George Knoeller, was fully corroborated by the latter, who also testified that he received the policy in question from the former in the early part of June, 1932, at which time he placed it in complainant's safe without ever examining it until after the occurrence of the accident in question.
From defendant's evidence it appears that a telephone order was received on May 27th, 1932, by Miss Spector, an *Page 267 
employe of Henry S. Mamorstein, Incorporated, from Mr. Sherry for what is commonly known as an "owners', landlords' and tenants' public liability policy," having, as she testified, liability limits of from $5,000 to $10,000, insuring complainant for a period of one year against liability for personal injuries, including death, suffered by others, by reason of its interest, in the premises 502 Jackson avenue, no mention having been then or at any other time made to her of 8-10 Williams street; that her employer, being without authority to write policies for or in the name of defendant, she, on that same day, telephoned this order to Ella Hellstein, an employe and representative of the defendant insurance company, whereupon the latter prepared and forwarded to W.E. Hermey, the defendant's official inspector, a "request for inspection" of the Jackson avenue premises, pursuant to which he inspected and measured said premises on May 31st, 1932, forwarding his official report with respect thereto to the defendant who received it on June 2d 1932; that Miss Hellstein after inspecting and finding Mr. Hermey's report satisfactory delivered it to one of her subordinates, whom she instructed to typewrite a policy covering complainant with respect to its interest in the premises 502 Jackson avenue, after which she examined said policy, comparing and checking it with Mr. Hermey's report and her own order memorandum, and finding it to conform therewith, she thereupon, on June 4th, 1932, forwarded it to Henry S. Mamorstein, Incorporated. She also testified that the Williams street property was never mentioned to her nor intended to be insured by defendant for whom she prepared the policy in question.
Notwithstanding the character of the evidence thus adduced, complainant insists that it is entitled to have the policy reformed in the respects hereinbefore mentioned. However, in so doing it incidentally and of necessity completely ignores the inexorable rule that a mere probability or a mere preponderance of the evidence that a mistake exists will be insufficint to actuate a court of equity in granting the high and extraordinary remedy of reformation. Only upon the production of proof clear, convincing and free from doubt *Page 268 
that the contract in its reformed and not original form is the one that the contracting parties understood and meant it to be — and as in fact it was but for the alleged mistake in its drafting — will this court grant an applicant that relief. Rowley v.Flannelly, 30 N.J. Eq. 612; Hupsch v. Resch, 45 N.J. Eq. 657;affirmed, 46 N.J. Eq. 609; Green v. Stone, 54 N.J. Eq. 387.
The burden of producing such proof is, of course, upon the one who seeks such relief.
Considered in the light most favorable to it, complainant's evidence at best manifests an intent on its part to insure the Williams street premises. It, however, fails to indicate in the slightest degree whether that, or what, was the intent of the defendant insurance company, excepting as may be gleaned from the policy itself which clearly indicates its intent to cover the Jackson avenue and no other premises. As such it falls far short of establishing the existence of a mutual mistake, in which event alone complainant would be entitled to have the policy reformed. It, at most, establishes the existence of a mistake, if any, solely and peculiarly on complainant's part — a unilateral and not mutual mistake — for which, in the absence of any proof of fraud or imposition, which is not here claimed, this court will not decree a reformation. Green v. Stone, supra; Ordway v.Chace, 57 N.J. Eq. 478; Giammares v. Allemannia Fire InsuranceCo., 91 N.J. Eq. 114; Gross v. Yeskel, 100 N.J. Eq. 293; Sardo
v. Fidelity, c., Company of Maryland, Ibid. 332; Klaas v.Boston Insurance Co., 103 N.J. Eq. 521; affirmed, 104 N.J. Eq. 492.
Passing now to the evidence adduced on behalf of the defendant insurance company. That it never intended to insure complainant by reason of the latter's interest in any other than the Jackson avenue premises clearly and convincingly appears from the testimony of Miss Spector, fortified by her written memorandum made during her telephonic conversation with Mr. Sherry, who placed the order for the policy with her. Her testimony is fully substantiated by that of Miss Hellstein who, for and on behalf of the defendant insurance company, received the policy order from Miss Spector, *Page 269 
and whose testimony is supported by the written memorandum which she made at the time she received the order from Miss Spector over the telephone. Both of these witnesses say — and in this they are borne out by their respective written memoranda — that the conversations were only with respect to the Jackson avenue premises and that at no time was the Williams street premises ever mentioned.
Were further proof required with respect to the defendant's intention to insure the Jackson avenue and not the Williams street property, it may be readily found in the undisputed, and to my mind most convincing, fact that, in conformity with its established and invariable practice to determine first the desirability of underwriting the risk and second the amount of the premium to be charged therefor, it inspected and measured the footage of the Jackson avenue property alone. The evidence is clear and undisputed that it never inspected nor measured the Williams street property, without doing which it, of course, would not have been in a position to determine the nature or desirability of the risk with respect to that property, or the amount of the premium to be charged therefor.
Consequently where, as here, the policy in question accurately embodies and expresses the intent of the defendant insurance company, even though it does not that of the complainant, reformation will be denied. Green v. Stone, supra; Giammares
v. Allemannia Fire Insurance Co., supra; Sardo v. Fidelity,c., Insurance Company of Maryland, supra; Gross v. Yeskel,supra; Klaas v. Boston Insurance Co., supra; Berkowitz v.Westchester Fire Insurance Co., 106 N.J. Eq. 238. To hold otherwise would be to compel the defendant insurance company to become a party to a contract which the evidence conclusively shows it never made nor intended to make.
With respect to the predicament in which complainant presently finds itself, suffice it to say that such is peculiarly of its own making and the result of its own inexcusable carelessness. Upon receiving the policy, it was under a clear duty to promptly examine it and if found not to be in conformity *Page 270 
with the terms agreed upon, as believed by it, to notify the insurance company thereof, as well as of its refusal to accept the policy in that form. Berkowitz v. Fire Insurance Co.,supra; Crescent Ring Co. v. Travelers' Indemnity Co.,102 N.J. Law 85. This, through no fault of the defendant, it failed to do, although in possession of the policy for almost three weeks before the occurrence of the accident. Not having done so then, it cannot now — after the status of the parties to the policy has been so changed as to preclude their being restored to their former respective positions — be heard to plead or complain of the alleged mistake.
I will advise a decree dismissing the bill.