## METROPOLITAN LIFE INS. CO. v. ASOFSKY et al.

### No. 5839.

District Court, D. New Jersey.
April 23, 1941.

McCarter & English, Verling C. Enteman, and Woodruff J. English, all of Newark, N. J., for plaintiff.

Hammer & Hammer, and Henry Hammer, all of Passaic, N. J., for defendants.

FAKE, District Judge.

This is a civil nonjury case in which the plaintiff insurance company seeks equitable relief in the reformation of an insurance policy executed and delivered in error.

The facts are as follows: The defendant William Asofsky, after some extended solicitation by plaintiff's agent Gutwill, signed an application on October 24, 1936, for an insurance policy. The defendant wanted therein, among other provisions, a specific covenant whereby he would enjoy a retirement income of $50 per month on arriving at the age of 60 years. Thereafter, on the 28th of October, 1936, the policy was issued from the home office, and on the 23rd of December, 1936, it was de-livered to defendant. It met his approval and he then paid the semi-annual premium of $71.85 as fixed by the policy. On or about the 7th day of January next after the delivery of the policy an employee in the home office of the plaintiff discovered that an error had been made in the amount of the premium in that the premium stated in the policy was the rate which would provide the $50 per month income at the age of 65 and not at the age of 60 as the policy provides. According to the rates established by the rate book, the premium should have been $89.60 and not $71.85.

On February 3, 1937, the company sent a corrected policy to its local manager at Paterson with instructions to obtain a return of the policy in question and deliver to defendant in its place the corrected policy. About a month after the policy in question had been delivered and paid for by Asofsky, the agent Gutwill called on him and said: "There was a mistake made and I would like to get that policy to send it back to the home office for correction." His testimony then follows:

"Q. Well, what did he say? A. He says, 'I am sorry;' he says, 'the company made a mistake.' He says, 'That's their business; it is my benefit.'

"Q. I see. You told him what the mistake was? A. Yes. I told him the difference in rate. So he just refused to give me the policy."

It appears that when the agent Gutwill solicited the policy and finally obtained the application, nothing was said as to the amount of the premium, nor did the defendant have any knowledge as to the amount of the premium until after the policy was issued and the agent tried to collect on it. Plaintiff concedes this.

The delay in the delivery of the policy as noted from October 28th to December 23rd was occasioned by the inability of the defendant to pay the amount of the premium. As to this the agent Gutwill said he made several attempts to collect the premium and deliver the policy without success and "Finally on the last day of the sixty days I came down and I said, 'Willie,' I says, 'either I get the money or the policy has to go back to the home office.' So then he paid me for the policy."

It would seem strange that the defendant had no knowledge of the amount of the premium until some time after the policy was issued, but the testimony stands un-

contradicted on this point, and the defendant's lack of knowledge about it is fully explained. The solicitations were generally if not always made at a laundry where defendant was employed at a time when his mind, in all probability, was occupied with other things. Moreover, Gutwill testified that defendant did ask about the premium on one occasion, and not having the rate book with him, Gutwill replied: "I can't tell you offhand. If you want, I can check the rates." Then further on in his testimony, it appears that Gutwill said to Asofsky: "When the policy is issued, if you don't like this policy you can change it to any other contract that you like." It is for the foregoing reasons, as well as from other factors in the record, I conclude there was no mistake on the part of the defendant William Asofsky, and the only mistake disclosed is that of the plaintiff.

The application for the policy provided that it might be amended, and on the 23rd day of December, 1936, Asofsky signed an amendment to question 15 of Part A of the application changing it from "$50. a month retirement income at age 60" to Retirement income at age 60 (male)." The only difference noted is the insertion of the word "male" and a reaffirmation is added of all other answers set forth in the original application. The heading of question 15, Part A, reads: "15. Plan of Insurance as designated in Rate Book." This discloses that plaintiff had reexamined the application and still failed to note the error in the premium.

 It is argued for the plaintiff that the above reference to the rate book must be read to the effect that the parties agreed that the rate should be the correct rate set forth in the rate book, and it appearing that such rate was not inserted in the policy, it was not in conformity with the understanding of either party, and therefore a mutual mistake arises. The weakness of this argument resides in the fact that the application also contains this language: "The Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the lifetime of the Applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof." This clause tends to defeat the construction of the heading to question 15 of Part A contended for by the plaintiff, since it expressly provides that the premium which shall put the policy in force and effect is not limited to the premium mentioned in the rate book, but rather to the "first premium stipulated in the policy", and this without any reference to the rate book whatever. It can not logically be urged that the defendant was mistaken as to the premium specifically mentioned in the policy. He paid it with full knowledge as to the amount. Nor can it be urged with any greater weight that he was charged with knowledge of a difference between the requirements of the rate book and the policy, since he was wholly without knowledge of any such difference, and no implication of law is involved as against him. He had a right as a reasonable man to rely on a correct ascertainment of the rate by plaintiff in whose books and records alone evidence as to the proper rate might be found. Nor was there any serious necessity on his part to ascertain the amount of the premium in advance of the tender of the policy, since he had been advised that if the policy did not conform to his desires he could reject it. It should be noted that when the defendant was advised that the premium was $71.85, he felt called upon to consult his mother as to whether or not he could afford to pay the premium, and when he concluded to accept the policy it was not easy for him to raise the money to pay the first premium. Had the premium demanded been $89.60 he might have refused the contract in its entirety. This right of rejection which existed when the policy was tendered, can not be restored since time was of the essence and defendant's age has advanced, and his physical condition may have undergone a change. Moreover, he might well have concluded when notified of plaintiff's mistake that plaintiff having made such a careless blunder, he would choose another company to be insured in, and as to this right also, his status quo as above shown can not be restored. It seems to me that the plaintiff's dilatoriness for a period of two months and ten days in failing to check the premium or by other means discover its error, and the further fact that it did not notify the defendant promptly thereafter on discovery, and (as hereinafter appears) collected at least one premium after discovery, places it in a position where it can not now in

equity and good conscience seek relief. Its own negligence and laxity standing alone estops it from any right to have the policy reformed.

It further appears that the second premium on the policy was paid by defendant on April 28, 1937, to the same agent, Gutwill, who had at an earlier date notified defendant of the error, and the premium was accepted by the plaintiff. Thereafter, several representatives of plaintiff visited Asofsky and endeavored to pick up the policy without success, and on June 23, 1937, the plaintiff wrote him a letter requesting a return of the policy in which they said: "Since the mistake was made by the company, it is no doubt fitting that we not ask you to make any adjustments on account of the premiums already paid." On August 3, 1937, and September 13, 1937, plaintiff wrote letters threatening suit unless the policy was returned, and after that, Asofsky went to the Passaic office on October 27, 1937, and paid a premium for which he received a receipt. As to this payment it is apparent that he avoided the Paterson office where they had knowledge of the error, in the hope that he might, as he did, deceive the Passaic office into an acceptance of the premium. His conduct in this regard, however, can not be held against him since his rights had matured at a prior date, and it appears that the plaintiff was in error in endeavoring to avoid the policy.

The law on the subject of reformation of contracts is now settled in this state. The latest case which has been brought to my attention is Lento v. Fidelity-Phenix Fire Ins. Co., November, 1939, 126 N.J.Eq. 331, 8 A.2d 822, 823, wherein Vice Chancellor Lewis held: "To secure reformation of a contract on the ground of mistake it is well settled that either the mistake must be mutual or that there is a mistake on the side of one party together with fraud or at least inequitable conduct on the side of the other party." Citing By-Fi Building & Loan Association v. New York Casualty Company, 116 N.J. Eq. 265, 173 A. 90, and cases therein cited; Sardo v. Fidelity & Deposit Co., 100 N.J. Eq. 332, 134 A. 774; Berkowitz v. Westchester Fire Insurance Company, 106 N.J. Eq. 238, 150 A. 404.

As has been shown the mistake here was unilateral and by the plaintiff and no fraud or inequitable conduct has been disclosed on the part of the defendant.

Plaintiff urges that reformation should be granted because of R.S. 17:34–45, N.J. S.A. 17:34–45, prohibits discrimination in insurance contracts, and as the policy now stands it grants a "special favor or advantage" in the "dividends or other benefits to accrue thereon", subjecting the plaintiff to the penalties of R.S. 17:34–46, N.J.S.A. 17:34–46, amounting to $100 for every $2,500 of insurance in contravention of the statute and imprisonment under certain conditions.

Counsel have cited no cases in this State bearing on the issue thus raised. Nor have I been able to discover any. Kaufman v. New York Life Ins. Co., 315 Pa. 34, 172 A. 306, is a case, however, directly in point, and the reasoning therein is to the effect that the violation of a non-discrimination statute of Pennsylvania, substantially in the same language as ours, does not afford a ground for reformation of a life insurance policy. That entire opinion should be read in connection with this case, not only because of its clear logic on the effect of the statute in question, but because the facts and the law bearing on other phases of this case are closely related.

An analogous situation is presented under R.S. 56:1–2, N.J.S.A. 56:1–2, which is an act making it a misdemeanor to transact business in this State under an assumed name without filing a certificate in the County Clerk's office and in the office of the Secretary of State. In construing this act, Mr. Justice Bergen ruled that the failure to file certificates as required did not prevent a plaintiff from recovering on an executed contract, and the violation of the act did not make the contract void, thereby placing the same interpretation on the act which had been given to a like statute by the courts of New York prior to its enactment here. Rutkowsky v. Bozza, 77 N.J.L. 724, 73 A. 502.

The relief sought by the plaintiff herein is denied. A decree will be entered for the defendants and against the plaintiff.