11 N.J. Super. 225 (1951)
78 A.2d 290
JOHN VOLKER, JR., PLAINTIFF-APPELLANT,
v.
THE CONNECTICUT FIRE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1951.
Decided January 17, 1951.
*227 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Oscar F. Laurie argued the cause for plaintiff-appellant.
Mr. Ralph Porzio argued the cause for defendant-respondent (Mr. Edward F. Broderick, attorney)
*228 The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The defendant's motion for involuntary dismissal, made at the end of the plaintiff's case, was granted in the Superior Court, Law Division, and the plaintiff appeals from the judgment entered thereon.
The plaintiff's suit was on an insurance policy dated February 9, 1949, to recover for the loss of his yacht which exploded and sank while being operated on April 9, 1949. The insurance company set up as a separate defense the breach of the warranty contained in the policy, which reads: "Warranted by the Assured that the within named Yacht shall be laid up and out of commission from Nov. 1st, at noon, until May 1st, at noon." In his amended reply the plaintiff alleged that the only warranties made by him were those contained in the application for insurance dated February 2, 1949, and demanded that the policy "be reformed to make it conform to the representations of facts made by the plaintiff," and further alleged that the defendant had waived the warranty contained in the policy. The pretrial order permitted the plaintiff to further amend his reply to allege that "the warranty in the policy of insurance is not the warranty agreed to between the parties and that the warranty by the assured was different from that contained in the policy." At the pretrial conference, the judge marked for identification the plaintiff's written application to the defendant for insurance on the boat, made February 4, 1949, but dated February 2, 1949, and the defendant's policy dated February 9, 1949, and in the order the parties agreed that both "may be received in evidence." Apparently the defendant made no effort to elicit a clearer statement of the ground upon which the plaintiff sought reformation.
At the opening of the trial the plaintiff attempted to introduce evidence on the issue of reformation of the policy provision concerning the "lay-up and out of commission" period, but the defendant objected on the ground that there was no allegation of fraud, misrepresentation or mistake. The plaintiff made clear to the court that his reply was intended to claim the equitable relief of reformation on the ground of *229 mistake. There was no suggestion that the defendant was surprised. The court below sustained defendant's objection and refused to consider the plaintiff's equitable claim, holding that no such claim was properly pleaded because of the failure of the pleadings to actually allege mistake as a ground for the relief. The trial then proceeded on the legal issues. At the end of the plaintiff's case the court granted the defendant's motion for involuntary dismissal on the ground that the "lay-up and out of commission" period of November 1st at noon to May 1st at noon, as set forth in the policy, controlled and under it the plaintiff failed to make out a prima facie case.
On the trial of the legal issues it appeared that on or about February 2, 1949, the plaintiff, who had purchased a yacht located at Forked River, New Jersey, consulted Fred W. Kemp, a general agent for the defendant insurance company, for the purpose of obtaining insurance on this yacht. Kemp, who had no experience in yacht insurance, called up the defendant's New York office, in the presence of plaintiff, and "got all the details, the terms and limits" of the defendant's policy. The plaintiff was required to answer certain questions, including the amount of insurance, the kind of boat, its length, value and contents, and the "lay-up and out of commission" period. This period was a six-month period during which the boat must be laid up and out of commission. The "lay-up and out of commission" period discussed was from October 1st to April 1st. Based upon the answers given to the questions over the telephone, the defendant agreed to insure the yacht as of February 2nd for a stated premium, and further gave the plaintiff permission to move the boat from Forked River to his mooring place in Manasquan during the lay-up period. Thereupon, the plaintiff paid the premium to Kemp.
On February 4th Kemp received an application form from the defendant and in the plaintiff's presence he typed on this form the answers to the questions as given by the plaintiff, and pursuant to the instructions of the defendant dated the application February 2nd, which was the day the binder was *230 put on the boat. The following questions and answers appear on this application form: "During what months is it laid up? Oct. to April. Where? Manasquan, N.J." Kemp returned the completed application form to the New York office of the defendant. The defendant issued its policy dated February 9th and forwarded it to Kemp, who received it on either February 10th or February 11th.
The plaintiff moved the boat from Forked River to Manasquan, as permitted by the defendant. On April 9, 1949, the plaintiff operated the yacht from its mooring place in Manasquan to a dock about a half-mile away to "gas up" and as he was "pulling away" from this dock the yacht exploded, burned and sank. The parties stipulated that the yacht was totally destroyed and that the extent of the damage was the limit of the policy.
The plaintiff argues that the court below erred in refusing to consider the question of reformation of the policy on the ground of mistake.
If this issue of equitable relief by way of reformation was properly before the court, the issue should have been decided by the court alone, even though other issues were involved in the case which were triable as of right by a jury. Rule 3:39-2. Subject to rules, the Law Division and the Chancery Division each exercise the powers and functions of the other division, when the ends of justice so require, and each division is required to grant both legal and equitable relief in any cause so as to completely determine all matters in controversy. Article VI, Section III, paragraph 4 of the Constitution. Cf. O'Neill v. Vreeland, 6 N.J. 158 (1951).
"The flexibility and seeming informality of pleadings under the new Rules should not deceive one into believing that the essentials of sound pleading at law or in equity have been abandoned. Quite the contrary; the objective of reaching an issue of law or of fact in two or at the most three simple pleadings has been attained, but not at the sacrifice of stating the elements of a claim or of a defense." Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136, 150 (1949). Compliance with the requirement that the elements *231 of a claim or of a defense must be stated in the pleading is particularly important when an equitable claim or defense is to be pleaded in an action in the Law Division. Before proceeding with the trial, the court must be put on notice by the pleadings and pretrial order that an equitable claim or defense is involved, because in such case Rule 3:39-2 comes into play, under which the court alone is required to decide all issues of fact not triable by a jury and to determine the sequence in which the equitable and legal issues shall be tried.
While the essential elements of the plaintiff's equitable claim for reformation should have been more clearly stated in the pleadings (cf. Civil Procedure Form No. 25 appended to our Rules), or at least in the pretrial order, we think the court was sufficiently apprised at the outset of the trial of the essential elements of the plaintiff's equitable claim by the pleadings, pretrial order and the colloquy between court and counsel. Under the circumstances of this case, we conclude that the court below erred in refusing to consider the equitable issue.
The judgment is reversed and new trial granted in the Law Division. Cf. O'Neill v. Vreeland, above.