22 N.J. Super. 314 (1952)
91 A.2d 883
JOHN VOLKER. JR., PLAINTIFF-RESPONDENT,
v.
THE CONNECTICUT FIRE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 25, 1952.
Decided October 28, 1952.
*316 Before Judges WILLIAM A. SMITH, FREUND and GOLDMANN.
Mr. Edward F. Broderick argued the cause for the appellant (Mr. Leonard Tolcoff, of counsel).
Mr. Oscar F. Laurie argued the cause for the respondent.
The opinion of the court was delivered by GOLDMANN, J.A.D.
The single question involved on this appeal is whether the Superior Court, Law Division, erred in granting reformation of an insurance policy issued by defendant and in permitting plaintiff to recover thereon.
On February 2, 1949 plaintiff, who had purchased a gasoline yacht located at Forked River, N.J., consulted Fred W. Kemp, the Chatham, N.J. general agent of the defendant insurance company, for the purpose of obtaining insurance on the yacht. Kemp had never written a marine insurance policy, and so phoned defendant's Newark branch office. Upon being referred to the New York office he phoned there in plaintiff's presence and "got all the details, the terms and the limits" of defendant's policy. Plaintiff provided Kemp with the information he transmitted over the phone regarding the amount of insurance, the kind of boat, its length, value and contents, and the "lay-up and out-of-commission" period. *317 This period was a six-month period during which the boat had to be laid up and kept out of commission. The period specifically requested by plaintiff and discussed by Kemp with the New York office was from October 1 to April 1. Based upon the answers given to questions put in the course of the telephone conversation, the New York office agreed to insure the yacht as of February 2 for a stated premium, calculated upon the 6% rate it had quoted Kemp. Further, it gave plaintiff the permission he had requested to move the boat from Forked River to Manasquan during the lay-up period. The New York office told Kemp that an application form would be forwarded. At the conclusion of the phone call, Kemp informed plaintiff that the insurance was in effect and that he could move the boat.
The application form arrived February 4, 1949. On the same day, and in plaintiff's presence, Kemp typed out the information called for by the application and which was given him by plaintiff. Kemp dated the application February 2, the day the binder was put on the boat, pursuant to instructions he had received during the New York phone call. The following printed questions and typed answers appear on the application form:
"During what months is it laid up? Oct. to April. Where? Manasquan, N.J."
Kemp then sent the application to defendant and was paid the agreed premium by plaintiff.
On February 8, 1949 defendant forwarded the application to Carpinter & Baker, defendant's New York "marine managers," with the request that they issue the necessary policy and forward it to Kemp. Carpinter & Baker then prepared and issued a policy in defendant's name insuring plaintiff's yacht, in which policy the following warranty appeared:
"Lay-up Warranty  Warranted by the Assured that the within named yacht shall be laid up and out of commission from Nov. 1st, at noon, until May 1st, at noon."
*318 Walter Lehr, an officer of Carpinter & Baker who handled the matter, testified that he personally directed that the policy be issued with this lay-up period although he knew and understood that the application called for a lay-up from October 1 to April 1. The reason for the change was that the marine underwriters preferred to have policies on small boats carry a November 1-May 1 lay-up period because such craft could not withstand heavy storms. Lehr admitted that no effort was made to notify plaintiff of the change in the lay-up period. In all other respects the policy issued conformed with what had been agreed upon over the telephone between plaintiff and defendant, Kemp's principal, and with what was called for in the application  in particular, the risk insured against, the amount of insurance ($2,000), the rate (6%), the premium ($120) and the period of coverage. Although issued on February 9, 1949, the policy was for the period from noon February 2, 1949 to noon February 2, 1950, consistent with the binder agreement.
Carpinter & Baker forwarded the policy to Kemp who received it on February 10 or 11, 1949 and placed it in his files. On April 9, 1949 the yacht exploded while being refueled, caught fire and was totally destroyed. Plaintiff filed his proof of loss but defendant refused to pay because the fire had occurred during the lay-up period of the policy, i.e., between November 1 and May 1.
Suit was instituted in the Superior Court, Law Division, for $2,000 damages, interest and costs. Defendant answered denying liability and set up as a separate defense that plaintiff, by using the yacht on April 9, 1949, had breached the lay-up warranty contained in the policy. Plaintiff's amended reply alleged that the only warranties made by him were those contained in the application for insurance dated February 2, 1949, and demanded reformation of the policy. The pretrial order gave plaintiff leave to further amend his reply to allege that the policy warranty was not the one agreed to between the parties. The trial was to be upon the pleadings, as amended.
*319 The first trial resulted in the granting of defendant's motion for involuntary dismissal, made at the close of plaintiff's case. On appeal, the Appellate Division reversed and granted a new trial. Volker v. Connecticut Fire Insurance Co., 11 N.J. Super. 225 (1951). The second trial was before the Superior Court judge sitting without a jury. The court permitted the pleadings and pretrial order to be amended to show that plaintiff's demand for reformation was based upon (1) mutual mistake of the parties as to the lay-up and out-of-commission period, and (2) equitable fraud, in that defendant represented to plaintiff that he would be covered against loss during the period of use, from April 1 to October 1, and plaintiff, relying upon defendant's representation, failed to take out other insurance covering that period and thereby suffered damages. Defendant entered a general denial to these allegations.
Kemp having died in the meantime, the transcript of his testimony at the first trial was by consent admitted in evidence on behalf of the plaintiff at the second trial held October 15, 1951. Judgment in favor of the plaintiff was entered December 29, 1951, granting reformation of the policy because of mutual mistake of the parties, so that the lay-up provision would read from October 1 to April 1, and awarding plaintiff $2,300 damages, the amount agreed upon between the parties.
Defendant-appellant argues three grounds for reversal: (1) in the absence of clear and convincing proof, plaintiff is not entitled to reformation of the policy upon the ground of mutual mistake; (2) defendant was under no duty to notify plaintiff that the policy as issued varied from the application, because it was his duty to read the policy; and (3) as an innocent principal, defendant cannot be held for the misrepresentation of its agent in the absence of actual or implied authority of the agent to commit the same.
This case is not strictly one of mutual mistake, in the sense that the term is commonly used in the law relating to reformation of instruments. The change in the lay-up clause *320 in the policy was deliberate. It was intentionally done by Carpinter & Baker, defendant's agent for marine underwriting, despite plaintiff's request that the lay-up period be from October 1 to April 1. It was done in the face of the very clear understanding on this matter between defendant, acting through its agent Kemp, and plaintiff  the result of the February 2 telephone call to defendant's New York office which effectuated an oral insurance binder with the requested lay-up provision.
The change in the lay-up clause was not a common mistake made by the parties. It was a mistake on the part of the plaintiff only, induced by defendant's action. Accordingly, the cases cited by defendant to support its argument that there can be no reformation of a policy unless mutual mistake is present (e.g. Sardo v. Fidelity & Deposit Co. of Maryland, 100 N.J. Eq. 332 (E. & A. 1926); Toth v. Vazquez, 8 N.J. Super. 289 (App. Div. 1950); Santamaria v. Shell Eastern Petroleum Products, Inc., 116 N.J. Eq. 26 (Ch. 1934)), although clearly standing for that proposition, are not pertinent in the circumstances of this case.
The case before us is factually one of mistake on the part of the plaintiff and inequitable conduct on the part of the defendant, acting through its agent, the marine underwriters. Although the trial court based its judgment upon mutual mistake, the judgment may be sustained if there is another ground in the record which legally supports it. Dikowski v. Metropolitan Life Ins. Co., 128 N.J.L. 124 (E. & A. 1942); Sansone v. Selvaggi, 121 N.J.L. 274 (Sup. Ct. 1938); Procacci v. U.S. Fire Ins. Co., 118 N.J.L. 423 (E. & A. 1937); Adams v. Olsen, 107 N.J.L. 288 (E. & A. 1930).
It may be observed, in passing, that in the concluding colloquy between the trial judge and counsel, the court more fully indicated the reasons for its decision in favor of plaintiff. The trial judge stated that it was clear that Kemp was defendant's agent (this was admitted by defendant's attorney); that the policy was admittedly issued for a lay-up *321 period different from that which plaintiff requested and understood he was to get; that the evidence was strong that plaintiff never knew of the change in the lay-up date; that it was the responsibility of the company to bring the change in the lay-up period home to plaintiff, since it knew that the dates fixed in the policy were at variance with the application; and, finally, that the company did not do this and that plaintiff, relying upon the company's agent, used his boat in April when he supposed it was covered under the policy, thereby suffering a loss. This reasoning supports reformation on the ground of defendant's inequitable conduct, rather than because of mutual mistake.
Equity will reform a contract in the case of a mistake of one party, accompanied by fraud or other inequitable conduct by the other party. Forman v. Grant Lunch Co., 113 N.J. Eq. 175 (E. & A. 1933); Chelsea National Bank v. Smith, 74 N.J. Eq. 275 (Ch. 1908); Sloss-Sheffield Steel & Iron Co. v. Aetna Life Ins. Co., 74 N.J. Eq. 635 (Ch. 1908), reversed on other grounds, 75 N.J. Eq. 545 (E. & A. 1909). The Restatement of the Law of Contracts (1932), § 505, p. 973, declares that:
"Except as stated in §§ 506, 509-511, if one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention."
Williston states the principle in somewhat different fashion (5 Williston on Contracts (Rev. ed. 1937), § 1548, p. 4340):
"Knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake. Thus, if one party before the execution of the instrument knew of or discovered the error of it, reformation will be allowed against him though the mistake is not strictly mutual." Citing Restatement of the Law of Contracts, § 505.
See also 29 Am. Jur., Insurance, §§ 241, 242, pp. 237, 238; 3 Corbin on Contracts (1951), § 614, p. 468; 3 Pomeroy's *322 Equity Jurisprudence (5th ed. 1941), § 847, p. 304 and § 870a, pp. 389, 390, citing Williston and the Restatement of the Law of Contracts.
The principle that reformation will be granted where there is mistake on the part of one party accompanied by fraud or other inequitable conduct on the part of the other party, applies in this case. There was a complete and valid oral contract of insurance between the parties. 1 Couch, Cyclopedia of Insurance Law (1929), §§ 77-79, pp. 123 ff.; 29 Am. Jur., Insurance, §§ 129, 130, pp. 145, 146; § 135, p. 151. Their minds had met in mutual agreement on all of the essential elements of the insurance contract on February 2, when agent Kemp phoned the New York office  the risk insured against, the amount of insurance, the duration of the risk, the premium to be paid, and the lay-up period. Nothing remained to be done but for the defendant to fill up and deliver the policy on the one hand, and for plaintiff to pay the premium on the other. The premium was paid before the policy was delivered. The application, which conformed to the detailed information already given to defendant and on the basis of which it authorized a binder, and the policy itself, were simply memorials of the insurance affected.
Tokio Marine & Fire Ins. Co. v. National Union Fire Ins. Co., 18 F. Supp. 720 (D.C.S.D.N.Y. 1937) is an analogous case. The District Court said (at page 722 of 18 F. Supp.):
"Where there is a preliminary agreement in definite terms, and a formal instrument executed later in fulfillment of the agreement contains terms materially different, by mutual mistake, a court of equity will rectify the formal instrument to make it conform to the agreement. * * * In such cases mistake on one side and inequitable conduct on the other * * * are the equivalent of mutual mistake so far as the right to reformation is concerned. * * * The principle has frequently been applied in cases where an insurance policy contains a departure from the preliminary contract of insurance."
In affirming, the Circuit Court of Appeals (91 F.2d 964, 966 (C.C.A. 2, 1937)) said:
*323 "But here there was the previous agreement which the binder represented; and it was one which both parties unquestionably understood. The form submitted by Johnson & Higgins [agent of the reinsurer who prepared the policy in question on which the reinsured relied] for incorporation into the final policy was the formalization of the earlier agreement. Ordinarily, a party had a right to rely upon the fact that the formal document prepared by the other will express their original and definitive agreement; he may expect and rely upon literal conformity if no notice to the contrary is given."
And if the binder of February 2 be considered merely a contract of temporary insurance, it was not displaced by a permanent contract because defendant did not communicate to plaintiff what in effect was an offer for a new contract, i.e., a contract which in all of its terms was exactly like the oral contract except for the change in the lay-up clause. Plaintiff was thus lulled into the mistaken belief that he was covered, thereby suffering loss through defendant's conduct.
Defendant seeks to escape reformation by claiming it was under no duty to notify plaintiff that its policy varied from the original oral agreement, and that it was plaintiff's duty to read the policy. It cites in support the cases of Citizens Casualty Co. of New York v. Zambrano Trucking Co., Inc., 140 N.J. Eq. 378 (Ch. 1947), 141 N.J. Eq. 310 (E. & A. 1947); Berrien v. New York Life Ins. Co., 132 N.J.L. 159 (E. & A. 1944); By-Fi Bldg. & Loan Ass'n. v. New York Casualty Co., 116 N.J. Eq. 265 (Ch. 1934); Berkowitz v. Westchester Fire Ins. Co., 106 N.J. Eq. 238 (E. & A. 1930); and Crescent Ring Co., Inc. v. Travelers' Indemnity Co., 102 N.J.L. 85 (E. & A. 1926). These are all cases where the insurance policy was actually delivered into the hands of the insured. Such is not the case here. For plaintiff to be barred from obtaining reformation on the ground that he should have read the policy, it must have been delivered to him. Dein-Bacher, Inc. v. U.S. Fidelity, etc., Co., 115 N.J. Eq. 205 (E. & A. 1934).
What happened in this case is that after Carpinter & Baker had prepared defendant's policy, it was sent to defendant's *324 agent, Kemp. Plaintiff was in Florida at the time Kemp received the policy. Kemp met plaintiff about March 1, after the latter's return home, and told him that he had the policy, that it was at his office, and that he would deliver it. He never did; instead, it remained in his files until after the fire, at which time plaintiff for the first time discovered that the lay-up period in the policy was different from that agreed upon. Kemp testified that he had examined the policy upon receipt as to dates and premium, but did not give too much attention to the lay-up period. Kemp was examined and cross-examined as to whether he had ever told plaintiff about the lay-up period and what it specifically was; after careful questioning by the attorneys as well as by the court, his final answer was that he was not certain that he ever did. Plaintiff testified that Kemp never spoke to him about the lay-up clause. The trial judge concluded that plaintiff did not know of the change in the lay-up date in the policy. We arrive at the same conclusion after a careful analysis of the testimony.
Defendant contends that at the time Kemp received the policy he was acting as plaintiff's agent. The contention is without factual basis. When the court observed that "It is obvious to me, at least, that Mr. Kemp was the agent of the defendant. Is there any denial of that?" defendant's counsel answered "No." We agree; the conclusion is inescapable that Kemp throughout acted as defendant's agent.
Kemp held an agency agreement under which, as agent, he was given "full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company * * *."
Defendant held Kemp out as its general agent. Further, by reason of the telephone conversation between its New York representative and Kemp, plaintiff being present in the agent's office throughout and supplying the answers to questions put by the New York office, defendant led plaintiff *325 to believe that Kemp was authorized to effect the marine insurance in question. In the absence of special circumstances, an agent of the insurer who solicits or effects insurance is clearly not the agent of the insured. An insurance company is liable for the acts done or contracts made by one of its agents within the scope of his actual or apparent authority, as a necessary or reasonable implication in order to effectuate other authority expressly conferred. Insurance companies are held impliedly to authorize their agents to do what is usual or necessary in the transaction of the insurance business. True, a company may limit the authority of its agent and thus bind all parties dealing with him having knowledge of the limitations, but if the act done or contract made by an agent is within the usual course of business and the apparent scope of his authority, no secret limitations upon his authority which are not known to the person with whom he is dealing are effective to limit such apparent authority. 29 Am. Jur., Insurance, §§ 89, 93, 95, pp. 112, 116, 117.
There is nothing in the testimony to indicate that Kemp was acting as other than defendant's agent either in effecting the insurance on February 2 or at any time afterward.
Defendant seeks to anchor its argument that Kemp was acting as plaintiff's agent at the time he received the policy, in some incidental testimony that Kemp had placed insurance for plaintiff for some 10 to 12 years and that he kept plaintiff's policies in his office. However, both Kemp and plaintiff (who is a builder) made it clear that these particular policies were fire insurance policies covering houses which plaintiff was currently building, and that Kemp held on to the policies to make sure they would be on hand at closings when purchasers took title, thus obviating possible loss of the policies. All other policies had in the past been delivered to plaintiff and kept by him. The record is barren of anything that would indicate that Kemp, upon receiving *326 the policy, suddenly changed character and, instead of continuing as defendant's agent, became plaintiff's agent.
Finally, defendant argues that it cannot be held for the misrepresentation of its agent. There is nothing that even remotely suggests that Kemp misrepresented anything. If by this argument defendant really means that he acted outside the scope of his authority in arranging for the marine coverage, then the record fails to sustain its position. Kemp acted strictly within his authority under the agency agreement by receiving plaintiff's proposal for insurance, communicating that proposal in every detail and at once to the New York office, and on the basis of the information given that office, obtaining permission to bind the company. At no time, either on February 2 or subsequent thereto, did Kemp misrepresent either his authority or any other fact connected with the insurance in question.
The judgment will be affirmed.